**Thomas H. NELSON, an individual, and Steven Mack, an individual, Plaintiffs,**

**v.**

**CITY OF ELMHURST, a Municipal Corporation, Chief John Millner, an individual, Officer Dennis Kazarian, an individual, Officer Robert J. Nicholas, an individual, Officer Michael Campise, an individual, and John Doe, an unknown individual, Defendants.**

No. 87 C 4356.

United States District Court, N.D. Illinois, E.D.

June 30, 1988.

James E. Beckley, Marsha A. Tolchin, Christopher J. Barber, Leo G. Aubel, James E. Beckley & Associates, P.C., Chicago, Ill., for plaintiffs.

Richard J. Puchalski, Doss Puchalski & Keenan, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

On July 17, 1987 Thomas Nelson and Steven Mack brought this action under 42 U.S.C. § 1983 against the City of Elmhurst ("the City"), Chief John Millner, Officer Kazarian, Officer Nicholas, Officer Campise and an unknown police officer. Plaintiffs allege that on May 8, 1987 defendants falsely arrested and assaulted them.

In Count One plaintiffs allege that the individual defendants violated plaintiffs' Fifth and Fourteenth Amendment rights. In Count Two plaintiffs allege that the City violated their Fifth and Fourteenth Amendment rights. In Count Three plaintiffs allege that Mr. Millner and the City continually failed to supervise, instruct and discipline defendants and therefore violated plaintiffs' Fifth and Fourteenth Amendment rights. In Count Four plaintiffs assert that defendants conspired to wilfully injure plaintiffs.

On November 25, 1987 the parties stipulated to the dismissal of the City and Chief John Millner.

Before the court are two pending motions:

1) a motion for summary judgment by defendants Kazarian, Nicholas and Campise;

2) the City and Mr. Millner's motion for attorney's fees. This court will address each motion in turn.

## BACKGROUND FACTS

The parties submitted the following evidence concerning Mr. Nelson's claims. Officer Kazarian described the following events in his affidavit. On May 8, 1987, he received a call from Officer Nicholas concerning assistance in controlling a fight at Mack's Golden Pheasant, a tavern located in Elmhurst. Officer Kazarian went to the tavern. Mr. Nelson approached Officer Kazarian in the tavern parking lot. Mr. Nelson appeared to be intoxicated. He knocked Officer Kazarian backwards. Officer Kazarian arrested him, using only reasonable force.

Officer Nicholas, in his affidavit, corroborated Officer Kazarian's account of the arrest.

Mr. Nelson stated in his deposition that he did not knock Officer Kazarian backwards. Mr. Nelson also stated that Officer Kazarian arrested him, handcuffed him and forcefully pushed him into the police car. Mr. Nelson hit the open car door and broke his arm.

The parties submitted the following evidence concerning Mr. Mack's claims.

Officer Nicholas stated in his affidavit that: (1) he observed a fight outside Mack's Golden Pheasant; (2) he saw Mr. Mack repeatedly pull the hair of and punch another man; (3) he broke up the fight; (4) Mr. Mack ran back into the tavern; (5) he advised Officer Turek to arrest Mr. Mack; (6) he did not take part in Mr. Mack's arrest.

Officer Campise stated in his affidavit that on May 8, 1987 he received a call for back-up assistance from Officer Nicholas. Upon Officer Campise's arrival at Mack's Golden Pheasant, Officer Nicholas told him to arrest Mr. Mack for battery. Officer Campise entered the tavern and told Mr. Mack that he was under arrest. Mr. Mack refused to obey Officer Campise's instructions. Officer Campise grabbed Mr. Mack's arm. Mr. Mack pulled his arm away. Officer Campise and another police officer, Officer Turek, struggled with Mr. Mack. Mr. Mack and Officer Campise fell to the ground; other patrons joined in to help Mr. Mack; Officer Campise finally handcuffed Mr. Mack. Officer Campise did not kick Mr. Mack or see any other officers kick Mr. Mack.

Officer Turek corroborated Officer Campise's account.

Mr. Mack testified in his deposition to the following facts. While Mr. Mack was in the tavern, Officer Campise grabbed his arm and said that Mr. Mack was under arrest. Mr. Mack pulled his arm away.[1] Then several police officers grabbed him and he was "knocked over four bar stools." He fell to the ground, where he was stepped on and handcuffed. Finally, he was picked up and taken to the squad car.

After his arrest, Mr. Mack did not seek medical treatment. He felt "slight" pain at the police station. He had bruises, scabs and scratches and his elbows were bleeding.

Mr. Mack went to work the next day and every work day thereafter. No police officer hit Mr. Mack or used any weapon on him during the arrest, but they did "push and shove" him. (DX 7, p. 47).

## DISCUSSION

### 1. Motion for Summary Judgment

Fed.R.Civ.P. 56(c) provides that a district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue" as to any material fact and that the moving party is entitled to judgment as a matter of law. When the facts are disputed, the parties must produce proper documentary evidence to support their contentions and may not rest on mere allegations in the pleadings. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir. 1983), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

Defendants Kazarian, Nicholas and Campise supported their motion for summary judgment with affidavits and excerpts from the plaintiffs' depositions. While plaintiffs filed a Local Rule 12(f) statement and a memorandum, they did not submit any additional evidentiary material.

### A. *Mr. Nelson's Claims*

Mr. Nelson did not produce any evidence that Officer Campise or Officer Nicholas either watched or participated in the conduct underlying his claims.[2] Neither did Mr. Nelson produce evidence that any of the three defendants conspired, as alleged in Count Four, to injure Mr. Nelson. Officer Campise's and Officer Nicholas' motions for summary judgment are therefore granted as to Mr. Nelson.

 Officer Kazarian argues that he is qualifiedly immune from civil damages liability. This court agrees.

To overcome a defense of qualified immunity, the plaintiff must show that the defendant violated clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed. 2d 396 (1982). In this case, Mr. Nelson has the burden of establishing that Officer Kazarian violated a constitutional right that was clearly established on May 8, 1987. *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir.1988). A right is "clearly established" if it is sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987);[3] *Klein v.*

---

**1.** Mr. Mack's deposition statements about his arrest are somewhat inconsistent. First, Mr. Mack stated that a police officer told him that he was under arrest as that officer grabbed his arm, to turn him around. Subsequently Mr. Mack described the following sequence of events: (1) a police officer grabbed his arm to turn him around; (2) Mr. Mack pulled his arm away; (3) police officers began to grab him; (4) one of the officers then stated that Mr. Mack was under arrest. (Dep. at 30).

**2.** Mr. Nelson initially testified in his deposition that he never saw Mr. Nicholas or Mr. Campise.

(Dep. p. 16). At a later point in his deposition, however, Mr. Nelson said that he saw Officer Nicholas in the parking lot (Dep. p 40). Mr. Nelson did not testify, however, that Officer Nicholas watched or participated in the arrest.

**3.** In *Green v. Carlson*, 826 F.2d 647, 650 (7th Cir.1987) the Seventh Circuit discussed the proper procedure for evaluating the issue of qualified immunity on a motion for summary judgment. The court wrote that district courts "should consider not only the plaintiff's allegations, but all the undisputed facts in the record when deciding whether the defendants' conduct

*Ryan et al.*, 847 F.2d 368, 371 (7th Cir. 1988).

In May of 1987 use of force by a police officer violated the Fourteenth Amendment if it caused severe injuries, was grossly disproportionate to the need for action under the circumstances, and was inspired by malice so that it amounted to an abuse of official power that shocks the conscience. *Gumz v. Morissette*, 772 F.2d 1395 (7th Cir.1985) *cert. denied*, 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986).

In May of 1987 the use of force violated the Fourth Amendment if the force was unreasonable under the circumstances. *Lester v. City of Chicago*, 830 F.2d 706, 709 (7th Cir.1987), *discussing Bell v. Milwaukee*, 746 F.2d 1205, 1278–9 & n. 88 (7th Cir.1984).

While the abstract principles governing excessive force claims were thus clearly established in May 1987, the law "in relation to the specific facts confronting" Officer Kazarian was not. *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir.1987). Mr. Nelson has not cited to any case law which is "closely analogous" to the present case or which would suggest that Officer Kazarian was on notice that his conduct was probably unlawful. *See William Klein v. Lawrence Ryan et al.*, 847 F.2d 368, 371 (7th Cir.1988); *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir.1986). And this court's research has not turned up any such cases. *Cf. Bailey v. Andrews*, 811 F.2d 366 (7th Cir.1987); *Bovey v. City of Lafayette, Ind.*, 586 F.Supp. 1460 (N.D.Ill.1984), *aff'd* 774 F.2d 1166 (7th Cir.1985); *Moats v. Village of Schaumburg*, 562 F.Supp. 624 (N.D.Ill. 1983).

This court holds that, viewing the undisputed evidence in the light most favorable to plaintiff,[4] a police officer could reasonably believe that Officer Kazarian's conduct was lawful, in light of the clearly

established law and the information he (undisputedly) possessed.

### B. *Mr. Mack's Claims*

Mr. Mack did not produce any evidence that Officer Nicholas or Officer Kazarian either saw or participated in the conduct underlying his excessive force claim. Neither did Mr. Mack produce evidence in support of Count Four, his conspiracy claim. Officer Nicholas' and Officer Kazarian's motions for summary judgment are therefore granted as to Mr. Mack.[5]

■ Officer Campise asserts that he is qualifiedly immune from civil damages liability. This court agrees. Viewing the undisputed facts in the light most favorable to Mr. Mack, it is not clear that a reasonable police officer would understand that Officer Campise's conduct violated either the Fourth or Fourteenth Amendments.

Officer Campise knew that Mr. Mack was to be arrested for battery and that Mr. Mack had run away from Officer Nicholas and into the tavern. When Officer Campise tried to arrest Mr. Mack, Mr. Mack turned and pulled his arm away. Assuming that, as Mr. Mack testified, Officer Campise and the other officers then knocked him over four bar stools, it appears that they were trying to stop and handcuff him. Because Mr. Mack stood beside the bar stools, when Mr. Mack fell, he fell onto and over the stools. Once Mr. Mack was on the ground, on his stomach, the officers' force, i.e. their stepping on him, seems to have been reasonably necessary to keep him on the ground until he was handcuffed. And Mr. Mack's slight injuries suggest that the police officers did not use excessive force in handcuffing him.

This court certainly does not condone the use of any force beyond that which is necessary to the performance of a police offi-

violated clearly established legal principles." *See also Kompare v. Stein*, 801 F.2d 883, 889 (7th Cir.1986).

4. The parties agree about Officer Kazarian's conduct. They disagree, however, about whether Mr. Nelson previously knocked Officer Kazarian down.

5. Mr. Mack testified in his deposition that he did not know if either Officer Kazarian or Officer Nicholas were inside Mack's Golden Pheasant, where the defendants allegedly used excessive force. (Dep. p. 60).

cer's duties. It may be that, in both Mr. Mack and Mr. Nelson's cases, the police officers pushed Mr. Mack and Mr. Nelson harder than was strictly necessary to achieve their legitimate objectives, i.e. to stop and handcuff Mr. Mack and to get Mr. Nelson into the squad car. But a court's hindsight judgment as to what amount of force was strictly necessary in any given circumstances does not determine the scope of a defendant's qualified immunity. Because of the policy concerns underlying the doctrine of qualified immunity, the doctrine shields a defendant from civil damages liability as long as his actions could reasonably have been thought consistent with the rights he allegedly violated. *Anderson v. Creighton*, — U.S. —, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

For the foregoing reasons, the motions for summary judgment of Officers Kazarian, Nicholas and Campise are granted.

## 2. Motion for Fees

The City and Chief Millner move for attorneys fees under 42 U.S.C. § 1988.[6]

42 U.S.C. § 1988 provides that a district court may award the "prevailing party" in a civil rights action a reasonable attorney's fee. A prevailing defendant may not, however, recover attorney's fees unless the plaintiff's action was "frivolous, unreasonable, or groundless," or unless "the plaintiff continued to litigate after it clearly became so." *Coates v. Bechtel*, 811 F.2d 1045, 1049 (7th Cir.1987) (quoting *Hughes v. Rowe*, 449 U.S. 5, 15, 101 S.Ct. 173, 178–179, 66 L.Ed.2d 163 (1980)). As a result, district courts can grant attorney's fees under § 1988 to prevailing defendants only in "very circumscribed situations." *Id.* at 1050 (quoting *Hershinow v. Bonamarte*, 772 F.2d 394, 395 (7th Cir.1985)).

In the present case, plaintiffs' claims against the City and Chief Millner were not frivolous at the time they were filed. Defendants argue to the contrary, stating that the complaint did not include any basis for municipal or supervisor liability under *Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir.1985). *Strauss*, however, involved a claim for municipal liability based upon a policy which was "nothing more than acquiescence in prior misconduct." *Strauss, supra*, 760 F.2d at 767. *See generally Williams v. City of Chicago*, 658 F.Supp. 147 (N.D.Ill.1987).

In this case, in Count Two at least, municipal liability is based upon plaintiff's allegation that the City affirmatively acted to violate plaintiffs' rights. Specifically, plaintiffs alleged that the City enlisted the Police Department's help in the City's attempt to deny Mack's Golden Pheasant a liquor license. (Amended Complaint ¶¶ 24–30). Thus the pleading requirements set forth in *Strauss* do not apply to Count Two.

In Count Three, municipal liability is based upon a "failure to instruct/discipline" theory similar to that asserted in *Strauss*. But because plaintiffs alleged in detail more than a single "isolated" incident of police misconduct, plaintiffs satisfied the pleading requirements set forth in *Strauss*.[7]

Plaintiffs did not continue to litigate Counts Two and Three after these counts clearly became frivolous. In September, 1987, plaintiffs' depositions were taken. It should have been clear soon thereafter that the City and Chief Millner could not be held liable for the individual officer-defendants' conduct. Rather than responding to the City and Chief Millner's motion for summary judgment, on November 25, 1987, plaintiffs stipulated to their dismissal. This

---

6. The defendants agreed not to seek attorney's fees under Fed.R.Civ.P. 11 as part of the parties' stipulation to dismiss.

7. Plaintiffs specifically alleged two separate incidents of excessive force: one involving Mr. Mack and one involving Mr. Nelson. At least four police officers were allegedly involved in the two incidents.

Because the same principles apply to a claim against a municipal official in his official capacity as apply to a claim of municipal liability, *Williams, supra*, 658 F.Supp. at 153, Counts Two and Three were not frivolous with respect to Chief Millner at the time they were filed.

court holds that plaintiffs did not litigate Counts Two and Three after it became unreasonable to do so. *Cf. Williams v. Kobel*, 789 F.2d 463, 472 (7th Cir.1986) (plaintiffs continued to litigate case after having had police records for 4 years and counsel's representations for two years).

For the foregoing reasons, this court denies the City and Chief Millner's motion for attorney's fees under 42 U.S.C. § 1988.

## CONCLUSION

Defendants' Motion for Summary Judgment is GRANTED. Defendants City and Chief Millner's Motion for Attorney's Fees is DENIED.