48

August SMITH, Plaintiff,

v.

CITY OF JOLIET, a Municipal Corporation, Defendant.

No. 89 C 6246.

United States District Court, N.D. Illinois, E.D.

Feb. 5, 1991.

Donald X. Murphy, Chicago, IL, for plaintiff.

Thomas A. Thanas, Jeffrey Scott Plyman, Patricia W. Supergan, City of Joliet—Corp. Counsel, Joliet, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

August Smith brought this Section 1983 action against the City of Joliet for damages arising from an incident on February 21, 1986. On that day, according to Smith, two Joliet police officers detained him with unnecessary and excessive force, causing mental and physical injury. Smith has forgone suit against the officers themselves, instead suing the City for "engag[ing] in a pattern of knowing and deliberate indifference to the use of excessive and unnecessary force in the arrest and detention of black persons and other persons who were of minority ancestry or culture." Smith had also set forth a second count alleging a conspiracy to violate his constitutional rights, but voluntarily dismissed it on April 25, 1990. Now before the court is defendant's motion for summary judgment. For the reasons stated below, that motion is granted.

### PLAINTIFF'S FACTS [1]

The facts, drawn from Smith's deposition testimony, are as follows. Around 7:00 p.m. on February 21, 1986, Smith pulled

---

1. Plaintiff's version of the facts differs dramatically, in parts, from defendant's. For the purpose of defendant's motion for summary judg-ment, the court will set forth and accept as true plaintiff's account of the facts in dispute.

into a driveway or lot (it is unclear which) next to his home in Joliet, Illinois. Momentarily after exiting his car he returned to it, planning to heat the engine so the car would start more easily the next morning. It took Smith two or three minutes to reenter his car because the driver's side door had a faulty hinge. After gaining entry, Smith sat in his car with the motor running.

Some time later, another car pulled in front of his, and two men emerged. Smith later discovered that both men were Joliet police officers, but at the time neither man identified himself, and their car was unmarked. According to Smith, one of the men pulled him out of the car, "slung" him up against the car, told him to put his hands on the roof of the car, pointed a gun at the back of Smith's head, "jammed" Smith's chest against the car roof, and "poked" the gun in Smith's ribs. Smith Dep., 37–46, 56. While one officer so engaged Smith, the other conducted a search of Smith's car. After 20 minutes or so, Smith's son arrived in his own car. At that point, the officers returned to their car and left, no arrest of Smith having been made.

This incident was simply one in a series of events representing a pattern of harassment against minorities by the Joliet police, according to Smith. His complaint alleges that incidents of excessive force took place in 1963, 1969, 1974, 1977, 1978, 1981, 1985, 1986, and 1988. Together, says Smith, these incidents indicate "a policy on the part of [the City of Joliet] to actually foster and approve the use of excessive force." Amendment to Complaint, p. 1. Defendant moves for summary judgment on two grounds. First, defendant argues that the treatment of Smith by the Joliet police officers, taking as true Smith's account of the event, does not give rise to a constitutional violation. Second, says defendant, Smith has failed to present competent evidence of an unconstitutional policy or custom on the part of the City of Joliet. As explained below, defendant is correct on both counts.

## DISCUSSION

Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits and other materials show "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c). No genuine issue exists "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The non-moving party is entitled to the benefit of all favorable inferences which can reasonably be drawn from the underlying facts; however, only reasonable inferences will be drawn, not every conceivable inference. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987).

Smith's complaint charges defendant City of Joliet with encouraging the use of excessive force by its police officers. The incident underlying this allegation is Smith's encounter with two Joliet police officers on February 21, 1986. Smith's case against the City of Joliet cannot go forward if his underlying encounter did not raise constitutional problems:

> If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.

*City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986) (emphasis original). The critical question, then, is whether the officers who detained Smith used unconstitutionally excessive force against him.

Where, as here, an excessive force claim "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment ..." *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). Determining whether force used to effect a seizure is "reasonable" under the Fourth Amendment

> requires a careful balancing of " 'the nature and quality of the intrusion on the

individual's Fourth Amendment interests' " against the countervailing governmental interests at stake ... Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.

*Graham,* 490 U.S. at 396, 109 S.Ct. at 1871 (citations omitted). The test, in short, is one of "objective reasonableness," to be determined from the totality of the circumstances. *O'Toole v. Kalmar,* 1990 WL 19542, 1990 U.S. Dist. Lexis 1934, slip op. at 7 (N.D.Ill.1990). Because the governing test is objective, excessive force claims are "susceptible to summary judgment determinations ... fewer cases should require a full-blown trial for resolution." *Id.*

While Smith's description of his encounter with the Joliet police officers is drastically different from theirs, the court must take Smith's account as true for the purpose of defendant's motion for summary judgment. The extent of physical contact between Smith and the police officers, according to Smith's deposition testimony and his answers to interrogatories, was as follows: one of the officers (1) "snatched" Smith from the car, at which time Smith's head struck the frame of the car (2) "slung" Smith up against the car (3) told Smith to put his hands on the roof of the car (4) put a gun behind his head (5) "jammed" Smith's chest against the roof of the car, and (6) pushed the gun against Smith's ribs. Smith Dep., 37–46, 56.

This scenario does not rise to the level of excessive force in violation of the Fourth Amendment. Having observed Smith's repeated, futile efforts to enter the car, the police officers could reasonably have suspected drugs, alcohol, or illegal entry. It would have been reasonable for them to approach Smith with caution, as they would any suspected felon, and keep him at bay with threats of force or the actual use of mild force. That is precisely what they did, even as Smith describes it. As the Seventh Circuit admonished in *Lester v. City of Chicago,* 830 F.2d 706, 712 (7th Cir.1987), "not every injury involving a state official sets forth a constitutional claim ... not every push and shove an officer makes during an arrest will subject the officer to § 1983 liability. The power to arrest carries with it the power to use some force to make an arrest."

Smith's injuries also suggest that the officers did not use excessive force. Smith testified that his chest "bothered [him] for a long time" and that he had "a lot of nightmares since this incident, bad ass dreams and stuff." Smith Dep., pp. 67–69. Without minimizing whatever trauma Smith may have experienced, the court notes that his injuries were minimal. Far from being subjected to "actual torture," to borrow Smith's description (Response, p. 2), the evidence shows that Smith was dealt with reasonably under the circumstances. Like another court in this district, "[t]his court certainly does not condone the use of any force beyond that which is necessary to the performance of a police officer's duties." *Nelson v. City of Elmhurst,* 691 F.Supp. 122, 126 (N.D.Ill.1988). In this case, however, there is no evidence suggesting that the officers used excessive force in detaining August Smith.

■ Neither is there evidence of an unconstitutional policy or custom practiced by the City of Joliet. Smith sets out a laundry list of incidents dating back to 1963, but it contains nothing more than unsubstantiated, conclusory allegations. Plaintiff's "evidence" consists solely of accounts describing these alleged incidents, without supporting affidavits, deposition testimony, or other competent evidence. He does offer a handful of police reports, but these do not in any way suggest the use of excessive force by Joliet police officers. He does not indicate how many thousands of arrests took place over the 25–year period. In short, Smith has brought no competent evidence revealing a policy or practice on the part of the City of Joliet that violates the Constitution.

For the foregoing reasons, defendant's motion for summary judgment is granted.