Craig S. STRAUSS, Plaintiff-Appellant,

v.

CITY OF CHICAGO, a municipal corporation, and Chicago Police Officer John Doe, Defendants-Appellees.

No. 84–2218.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1985.

Decided April 17, 1985.

Tom Leahy, Law Office of Tom Leahy, Chicago, Ill., for plaintiff-appellant.

Robert W. Fioretti, Mary K. Rochford, Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, BAUER and POSNER, Circuit Judges.

CUMMINGS, Chief Judge.

Plaintiff Craig Strauss filed suit against the City of Chicago (the "City") and Chicago Police Officer John Doe under 42 U.S.C. § 1983.[1] The district court granted the City's motion to dismiss for failure to state a claim, causing plaintiff to file a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm the judgment of the lower court for the reasons stated herein.

I

For purposes of this Fed.R.Civ.P. 12(b)(6) motion, we take the factual allegations in plaintiff's complaint as true. Strauss' complaint arises out of an incident on March 14, 1983. On that date plaintiff was lawfully on the premises of 7400 North Western Avenue when Chicago Police Officer John Doe placed Strauss under arrest without probable cause, or a reasonable belief that a crime had been committed or that Strauss had himself committed a crime. Subsequent to this unlawful arrest, the unnamed police officer struck plaintiff in the face.

Strauss alleged that policies of the City proximately caused this unlawful police conduct. Specifically, he claimed that the City

a. Had a custom and practice of hiring persons such as Defendant JOHN DOE, whose prior history of brutality

should have rendered them unacceptable for hire.

b. Had a custom and practice of allowing Chicago Police Officers, such as Defendant JOHN DOE, to remain cloaked with legal authority and employed as Chicago Police Officers, even though their experience on the job showed them to be brutal in nature and frequent violators of civil rights of persons in custody.

c. Had a custom and practice of allowing those in custody to be silenced by causing them to be beaten and physically abused.

d. Had a custom and practice of conducting investigations against police officers, by which said officers would be exonerated of any fault as a result of the investigative procedures employed by the police department; and which would result in the continued employment and cloak of authority upon brutal officers such as Chicago Police Officer JOHN DOE.

Strauss pled no facts to support this charge, apart from those surrounding his own unlawful arrest and physical injury. He sought compensatory damages from the City for his injuries.[2]

II

Our analysis begins with *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690–691, 98 S.Ct. 2018, 2035–2036, 56 L.Ed.2d 611 (1978). The Supreme Court held there that municipalities could be held liable under Section 1983 for constitutional violations caused by their official policies, including

---

1. Section 1983 provides in relevant part:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * *, subjects, or causes to be subjected, any * * * person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.* * *

2. Strauss' complaint contained four counts, the first of which sought compensatory damages as

just described. The second count sought punitive damages from the City, which are unavailable under *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Plaintiff agreed that punitive damages are currently unavailable (memo in opposition to motion to dismiss at 6). The third and fourth claims are pendent state law claims against the City. The lower court properly dismissed them under *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). These rulings are not at issue here.

unwritten customs. At the same time the Court made very clear that the language and legislative history of Section 1983 compelled the conclusion that municipalities could not be held liable solely on a theory of *respondeat superior*. *Id.* at 691, 98 S.Ct. at 2036. Proximate causation between the municipality's policy or custom and the plaintiff's injury must be present. Congress believed that to do otherwise would impose a broad, general liability raising insurmountable constitutional difficulties. *Id.* at 693–694, 98 S.Ct. at 2037–2038. "Instead, it is when execution of a government's policy or custom * * * by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037. This emphasis on causality and on official policy supported our holding that the "allegation of a single incident of unconstitutional conduct by a municipal employee usually does not establish a sufficient basis for suing the municipality." *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir.1981). A successful suit requires the plaintiff to establish that he was injured, and that some municipal policy, custom or practice proximately caused the injury. *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981); *Powe*, 664 F.2d at 643, 649–650; *Rivera v. Farrell*, 538 F.Supp. 291, 295 (N.D.Ill.1982).

▮▮▮ We affirm the lower court's dismissal of Strauss' complaint for failure to state a claim because he has alleged no facts to suggest that the policies of which he complains actually exist. The standard a defendant must meet to have a claim dismissed for this reason is admittedly a high one. Dismissal is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). To further this end a court must construe pleadings liberally, and mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss. J. Moore and J. Lucas, 2A Moore's Federal Practice ¶ 12.08 at 2274, 2285 (1984). Still "the lack of intimation of *any facts* underlying the [Talley] claim," *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981) (emphasis in original), certiorari denied sub nom. *Talley v. Crosson*, 460 U.S. 1037, 103 S.Ct. 1426, 75 L.Ed.2d 787, justifies dimissal. *Briscoe* also involved a Section 1983 claim, but for conspiracy. There plaintiff Talley's only allegation of conspiracy contained legal conclusions "wholly devoid of facts," *id.*, very similar to the situation at bar. Strauss has identified four separate "custom[s] and practice[s]," one or more of which may have caused his injury (Complaint at 2–3), but the only facts alleged relate to his arrest. Nothing in the complaint suggests that the incident was other than an isolated one unrelated to municipal policy, leading us to affirm the dismissal of the complaint, as we did in *Briscoe* with respect to Talley's claim.

▮▮ A complaint that tracks *Monell's* requirement of official policy with bare allegations cannot stand when the policy identified is nothing more than acquiescence in prior misconduct.[3] The absence of any facts at all to support plaintiff's claim renders the allegations mere legal conclusions of Section 1983 liability devoid of any well-pleaded facts. Our conclusion today does

---

**3.** The third and fourth policies that Strauss identified, those of allowing police officers physically to abuse those in custody and of corruption in the investigative process, clearly are aspects of a policy of acquiescence in known constitutional violations. Strauss might argue that the first two policies, those of hiring and retaining in employment as police officers individuals with known histories of brutality, constitute affirmative policies by the City going beyond mere acquiescence. But what the allegations amount to is that the City has hired brutal persons as police officers (without any indication that the City knew or should have known of the prior history of brutality) and then retained them even after receiving notice of the individuals' violent propensities. In other words, the City has supposedly acquiesced in the physical abusiveness of such persons by not taking steps to fire them or to investigate reported offenses properly.

not conflict with the settled rule stated in *Conley,* 355 U.S. at 47, 78 S.Ct. at 103,

> that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is *and the grounds upon which it rests.* (Footnote omitted; emphasis added.)

Plaintiff here has set out no grounds upon which his claim rests, an omission that is fatal. To allow otherwise would be tantamount to allowing suit to be filed on a *respondeat superior* basis. Plaintiffs could file claims whenever a police officer abused them, add *Monell* boilerplate allegations, and proceed to discovery in the hope of turning up some evidence to support the "claims" made. See *Rodgers v. Lincoln Towing Service, Inc.,* 596 F.Supp. 13, 20 (N.D.Ill.1984) (claims "based on wholly conclusory allegations of a de facto municipal policy * * *, the existence of which is to be inferred not from something the municipality did but rather from its inaction, constitute one of the most prevalent forms of abuse in section 1983 actions"); *Tritsis v. Officer Owsley,* No. 83 C 1264, slip op. at 4 (N.D.Ill. June 13, 1983) (no facts alleged in complaint other than those relating to the single incident involving plaintiff; court concluded that "[o]ne incident of unconstitutional conduct does not show that a city has a policy of encouraging police officers to engage in unconstitutional acts"). Cf. *Smith v. Ambrogio,* 456 F.Supp. 1130, 1137 (D.Conn.1978) (court dismissed Section 1983 complaint, similar to one at bar, that was also completely lacking in any facts concerning existence of municipal policy).

The existence of a policy that caused a plaintiff's injury is an essential part of Section 1983 liability, so that some fact indicating the existence of some such policy must be pled. Without some evidence apart from the fact of employment, regardless how slight, that a policy causing plaintiff's injury might exist, the plaintiff simply cannot proceed in court against the municipality. See *Sutliff, Inc. v. Donovan Co.,* 727 F.2d 648, 654 (7th Cir.1984) (even under the notice pleading of the federal rules, pleader must still include either direct or inferential allegations respecting all the material elements of a claim, and bare legal conclusions attached to the narrated facts will not suffice).

Strauss did attempt to establish the minimal facts required by including statistical summaries from the Office of Professional Standards regarding complaints filed with the police department (memo in opposition to motion to dismiss). In *Powe, supra,* we stated that "the allegation of a pattern of conduct or a series of acts violative of constitutional rights will in many cases raise an inference of municipal policy." *Powe,* 664 F.2d at 651. While the type of information plaintiff provided us could furnish the necessary foundation to allege a "pattern of conduct or a series of acts," the generalized summaries to which Strauss points do not meet even the low pleading threshold established in the federal courts. Plaintiff suggests that the police department's sustaining only six to seven percent of all registered complaints filed for 1977, 1978 and 1979 "must give rise to a reasonble man's suspicions that defendant Chicago's methods of review are weighted to discourage positive findings" (memo in opposition to motion to dismiss at 6).[4] This reasoning is specious, for the

---

4. These numbers are also somewhat dated since even the most recent year is four years prior to the year in which Strauss was injured. Police departments that earlier had in fact been guilty of the sorts of practices that Strauss charges might have remedied the alleged policies by the time of a plaintiff's injury four years later, so that no such custom could have proximately caused the injury. Delays in tabulation and reporting might mean that these statistics were the most recent that were available to Strauss,

though he does not indicate whether that was the case. Whatever the situation, our decision does not in any way turn on the age of the statistics, although that might be an issue had the numbers been correlated to Strauss' injury in the manner that we suggest could survive a motion to dismiss.

*Daly v. City of Chicago,* No. 81 C 6632 (N.D.Ill. April 19, 1984), does not afford plaintiff the support on this point he attempts to claim. In

number of complaints filed, without more, indicates nothing. People may file a complaint for many reasons, or for no reason at all. That they filed complaints does not indicate that the policies that Strauss alleges exist do in fact exist and did contribute to his injury.

At the very least Strauss "would need to identify as well what it was that made those prior arrests * * * illegal and to show that a similar illegality was involved in his case." *Ekergren v. City of Chicago,* 538 F.Supp. 770, 773 (N.D.Ill.1982). Judge Getzendanner in *Ekergren* distinguished the situation where "[g]eneral, unspecific allegations of frequent 'illegal arrests' * * * fail to establish any pattern" from her earlier decision in *Spriggs v. City of Chicago,* 523 F.Supp. 138 (N.D.Ill.1981), in which "this court found a sufficient pattern in allegations that the police regularly use violence in dealing with black suspects." *Ekergren,* 538 F.Supp. at 773. Strauss' data similarly represent nothing more than generalized allegations bearing no relation to his injury.

We do not mean to imply that a plaintiff must plead in greater detail, but merely that the plaintiff must plead some fact or facts tending to support his allegation that a municipal policy exists that could have caused his injury. Identifying such facts is of course more difficult when the policy through which plaintiff is aggrieved is one of acquiescence by the City in prior misconduct, thus encouraging the misconduct to continue, than when the policy is an affirmative one through which the City has acted to harm the plaintiff. *Murray v. City of Chicago,* 634 F.2d 365 (7th Cir.1980), certiorari granted *sub nom. Finley v. Murray,* 454 U.S. 962, 102 S.Ct. 501, 70 L.Ed.2d 377, certiorari dismissed, 456 U.S. 604, 102 S.Ct.

2226, 72 L.Ed.2d 366, illustrates the difference. In *Murray* plaintiff was arrested, taken to police headquarters, forced to submit to strip searches, and imprisoned for several hours on an invalid warrant that had been quashed over three months earlier. The warrant recall had never been transmitted properly from the clerk's office to the police department. We reversed the district court's motion to dismiss, explaining that "[s]omeone is surely at fault for failing to establish or execute appropriate procedures for preventing such serious malfunctionings in the administration of justice." *Id.* at 366. The omission involved not acquiescence in prior misconduct but action or inaction on the part of the City itself that directly caused plaintiff's wrong. The omission was sufficiently egregious that plaintiff's injury alone suggested an established policy. Since it was possible that the plaintiff might be able to establish the existence of a policy, custom, or practice, the City was not dismissed at that early stage in the lawsuit. *Id.* at 367.

In the case at bar, plaintiff has alleged something less than the failure to establish or execute appropriate procedures; he has alleged a policy of knowingly acquiescing in an individual police officer's brutality. This claim requires some fact on which plaintiff's opinion is based, a fact not included in his pleadings. We are sympathetic to Judge Marshall's concerns expressed in *Means v. City of Chicago,* 535 F.Supp. 455 (N.D.Ill.1982), that plaintiffs will lack the information necessary to meet even the minimum pleading requirements we set out here until they are allowed discovery and that dismissing such claims prematurely could permit constitutional violations to go unremedied.[5] If any city

that case Judge Leighton denied the City's motion to dismiss for failure to state a claim. Without deciding the correctness of his ruling, we note that the pleadings in that case contained very specific data on police brutality pertaining to the individual police officers involved and the police station at which the plaintiff had allegedly been beaten. This information differs greatly from the quite general statistics Strauss cites. We note also that Strauss omitted the

statistical data he cites from his pleadings and included the information only in his memorandum in opposition to defendant's motion to dismiss. See Fed.R.Civ.P. 7.

5. In *Means,* the plaintiff made allegations similar to those at bar, namely, that the City "failed to train adequately the officers in question and police officers generally, failed to supervise and control their actions, and failed adequately to discipline them for past misconduct thereby en-

indeed has a custom of institutionalized brutality, then those injured are entitled to relief under Section 1983. Judge Marshall eloquently stated:

> We are at a loss as to how any plaintiff, including a civil rights plaintiff, is supposed to allege with specificity prior to discovery acts to which he or she personally was not exposed, but which provide evidence necessary to sustain the plaintiff's claim, i.e., that there was an official policy or a *de facto* custom which violated the Constitution.

*Id.* at 460.

But the complaint before us illustrates the possibilities in drafting that Judge Marshall's approach leaves open to a creative lawyer. All counsel would need to do would be to concoct some explanation of plaintiff's injury that implicated the municipality—for example, a custom and practice of hiring as police officers those with a history of brutality—and the doors of the federal courtroom would swing open. Congress did not intend for Section 1983 liability to be so wide; mere employment of a tortfeasor is insufficient to impose liability on a municipality. Instead a cause of action will lie only for those injuries caused by faults "systemic in nature," *Powe*, 664 F.2d at 651. Because a municipality can be held liable only for its regular procedures, not for the isolated independent tort of an individual employee, some fact indicating such procedures must appear in the complaint.

■ Once the district court dismissed plaintiff's complaint for failure to state a claim, Strauss could either have sought the right to amend his complaint pursuant to Fed.R.Civ.P. 59(e) or 60(b) or stood on his complaint and appealed. J. Moore, 3 Moore's Federal Practice ¶ 15.07[2] at 15–51 (1984). His having elected the latter alternative after having had the opportunity to amend justifies the affirmance of the district court's dismissal. Plaintiff now argues that he should be permitted at least to amend the complaint to name the defendant John Doe and pursue his claims against him.[6] Plaintiff has already had full opportunity to seek amendment, but has failed to do so. Moreover, John Doe was never served with summons and a copy of the complaint, so that the district court lacked jurisdiction over him. In this situation, dismissal of both parties was proper.[7] The district court's judgment is affirmed.

---

couraging the use of excessive force in the future." 535 F.Supp. at 460. The complaint itself detailed only the facts of the plaintiff's injury but "clearly contemplate[d] proof of more than this incident in order to prove the alleged policy; it contemplate[d] proof of numerous instances of misconduct upon which the City failed to act." *Id.*

6. Plaintiff's primary justification seems to be that because "John Doe" did not join in the City's motion to dismiss, he is still a party (Br. at 14; Reply Br. at 4). This argument is nonsense, for plaintiff cannot seriously expect the unnamed police officer, who has never been given notice, to know of the lawsuit and appear to file a motion to dismiss. Plaintiff had the responsibility of taking the steps necessary to identify the officer responsible for his injuries, a responsibility substantially supported by the discovery mechanisms available to him during the pendency of the lawsuit. Cf. *Gillespie v. Civiletti*, 629 F.2d 637, 642–643 (9th Cir.1980) (district court abused its discretion in dismissing complaint without requiring a reply to interrogatories *pro se* plaintiff had already filed).

In this situation, plaintiff knows from the outset that he cannot sustain his claim against John Doe without engaging in discovery to identify him and that allowing a complaint to be filed against an unnamed party in the first place is viewed with disfavor. See *id.* at 642. The considerations here differ from the more general ones underlying our observation in *Murray*, 634 F.2d at 366 n. 3, that we would excuse a plaintiff's delaying discovery until after the court had ruled on the defendant's motion to dismiss for failure to state a claim. There the concern was one for wasted effort; here presumably Strauss could maintain some sort of claim against at least the individual police officer responsible for his injuries, so that his failure to proceed in discovery against John Doe is inexcusable.

7. The remaining three counts were properly dismissed, as noted *supra* n. 2.