**William M. MALONEY, Plaintiff,**

v.

**CITY OF CHICAGO, Fred Rice, Donald Hubert, Donald Berlin, Jerry Willson and Investigative Consultants, Inc., Defendants.**

**No. 86 C 6026.**

United States District Court,
N.D. Illinois, E.D.

Oct. 13, 1987.

Edward R. Theobald, Law Offices of Edward R. Theobald, Chicago, Ill., for plaintiff, William M. Maloney.

Herbert Caplan, Asst. Corp. Counsel, Chicago, Ill., for defendants, City of Chicago & Fred Rice.

Jeff Harris & Carl Gigante, Foran, Wiss & Schultz, Chicago, Ill., for defendants, Donald Berlin and Investigative Consultants, Inc.

P. Scott Neville, Chester Slaughter, Chicago, Ill., for defendant, Donald Hubert.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

This action arises out of a suit brought by plaintiff, William M. Maloney ("Maloney"), against defendants, City of Chicago ("City"), Fred Rice ("Rice"), Donald Hubert ("Hubert"), Donald Berlin ("Berlin"), Jerry Willson ("Willson") and Investigative Consultants, Inc. ("ICI"), (also collectively referred to as "defendants") due to their alleged retaliation against him for filing a previous suit against the City and various City officials. This cause is presently before the court on defendants' motion to dismiss the first amended complaint. For the reasons which follow, the motion is granted in part and denied in part.

Plaintiff brings this suit in three counts. The first is based on 42 U.S.C. § 1983 and alleges violations of his First Amendment rights to petition the government for redress of grievances, to participate as a litigant to privacy and to freedom of speech, and violations of equal protection under the law. The second count is based on the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. The third count is based on alleged conspiracy and is brought pursuant to 42 U.S.C. § 1985(3).

## DISCUSSION

Defendants' various arguments may be summarized as follows: (1) Count I of the

amended complaint fails to state a claim under Section 1983 because Maloney makes no allegations to support any claim of constitutional deprivation; (2) Count II of the amended complaint fails to state a claim because the FCRA does not apply in this situation; (3) Count III fails to state a cause of action under Section 1985; and (4) Hubert is absolutely immune from any claims against him arising out of his duties as Special Assistant Corporation Counsel.

### FACTS[1]

On January 25, 1984 plaintiff, a member of the Chicago Police Department for over twenty-seven years, filed a complaint in district court against the named defendants, Harold Washington ("Washington"), Rice and the City, alleging that they had intentionally demoted, harassed and forced plaintiff to resign from the Chicago Police Department because of plaintiff's race (white) and his political beliefs and affiliation in supporting the candidacy of Jane M. Byrne for Mayor of Chicago in the primary election (¶ 14).

After plaintiff was deposed in this case, Hubert met with Berlin and Willson, who are private investigators, beginning in October, 1984 and agreed with them to intentionally intimidate, harass and retaliate against plaintiff for exercising his rights under the First Amendment, and planned to intentionally violate plaintiff's rights to privacy and freedom of speech (¶ 15). Defendants also agreed and conspired to commit these acts to deter other City employees who did not politically support Washington for Mayor (¶ 16).

In furtherance of this agreement Hubert instructed Berlin and Willson to (a) follow and surveil plaintiff for the sole purposes of harassing and intimidating him; (b) conduct an intensive financial net worth investigation of plaintiff without reasonable belief that plaintiff had or was currently committing a criminal offense; and (c) unlawfully obtain under false pretenses a con-

sumer report on plaintiff (¶ 17). Berlin and Willson met with and discussed this plan with Chicago Police Department Sgt. Frank Cappitelli in November of 1984 (¶ 20).

From November, 1984 through March 1985, Berlin and Willson proceeded to carry out this plan (¶¶ 18–28). They unlawfully obtained reports from Chicago Title & Trust Company regarding any purchases of real property by plaintiff. These defendants also unlawfully obtained two consumer reports under false pretenses which contained confidential and private credit and financial information concerning plaintiff and disseminated all such information to Hubert (¶¶ 21–23). Berlin and ICI agreed in a written contract with the credit bureau to request and use the credit information provided on consumers such as plaintiff for permissible purposes only, as set forth in the FCRA (¶ 23). The consumer reports on plaintiff were not requested and used by defendants for any permissible purpose under the contract or under the FCRA (¶ 24).

Berlin and Willson also followed and harassed plaintiff and met with a police captain who provided information about plaintiff's friends and places plaintiff frequented to aid them in their scheme (¶¶ 25–28).

Other police officers who filed discrimination suits against the City were also retaliated against in many of the same ways as plaintiff was for filing his first suit (¶¶ 33–34). These actions on the part of the City and its officers represent the custom and policy of the City of retaliating against and violating the First Amendment rights of Chicago police officers who held supervisory command rank positions and who filed lawsuits against the City which alleged violations of the officers' First Amendment rights (¶ 33).

Defendants' unlawful actions were not intended to and did not investigate plaintiff's claims of political and racial discrimination of his prior suit (¶ 34).

---

**1.** For purposes of a motion to dismiss, all facts alleged by plaintiff in his complaint are assumed to be true and all inferences must be drawn therefrom in the light most favorable to him.

"¶" refers to paragraphs of plaintiff's complaint.

## SECTION 1983

Defendants contend that the complaint fails to state a claim against the City because it does not state facts sufficient to allege a City policy or practice to retaliate against those who file suit against the City.

Although the City cannot be held liable under the doctrine of *respondeat superior* for the actions of its officers and agents, it can be held liable under Section 1983 if its unlawful conduct was performed pursuant to a custom or policy of the City. *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985). Plaintiff need only plead some facts which indicate that these actions were more than isolated incidents and were part of a municipal policy. *Id.* at 767. Dismissal on a motion to dismiss a claim such as this is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ Plaintiff has alleged sufficient facts to state a claim of municipal policy to retaliate against police officers who filed suits for discrimination against the City. Plaintiff alleges that the City and its officials and agents not only retaliated against him but that they also retaliated in similar ways against other plaintiff police officers in a separate discrimination suit against the City.

■ Defendants next allege that plaintiff has stated no claim of constitutional deprivation since defendants have not violated plaintiff's constitutionally protected zone of privacy. They contend that surveillance alone is not a constitutional deprivation under *Laird v. Tatum*, 408 U.S. 1, 8–14, 92 S.Ct. 2318, 2323–2326, 33 L.Ed.2d 154 (1972). Defendants also contend that plaintiff was not chilled in the exercise of his First Amendment rights to petition the government for redress of grievances, and

the fact that he has filed two lawsuits against the City and its officials is proof of that. Defendants claim that their alleged retaliation against plaintiff in this case was merely part of routine information gathering regarding plaintiff's medical and financial status for possible use as impeachment material in contesting plaintiff's claims of financial and physical/emotional damages in his discrimination suit against the City.

Although government surveillance alone does not rise to the level of a constitutional violation, if plaintiff pleads objective harm to the exercise of his or her First Amendment rights due to the surveillance then it states a claim under the First Amendment. *Id.* at 9–13, 92 S.Ct. at 2323–2325. Allegations of government action taken in retaliation for the exercise of protected First Amendment rights sufficiently states harm to the exercise of a person's First Amendment rights and thus would survive a motion to dismiss. *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 283–284, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977); *Rakovich v. Wade*, 819 F.2d 1393, 1398 (7th Cir.1987).[2]

Plaintiff alleges that defendants retaliated against him for the filing of the first suit against the City and its officials which resulted in the chilling of the exercise of his First Amendment rights. He contends that defendants undertook a criminal investigation of his financial status without any justification and surveilled him, all for the purpose of intimidating and harassing him. Such claims go beyond mere allegations of abuse of discovery and are sufficient to state a cause of action for a First Amendment violation under Section 1983.

## FAIR CREDIT REPORTING ACT

Section 1681q of the FCRA prohibits any person from "knowingly and willfully" obtaining "information on a consumer from a consumer reporting agency under false

---

**2.** Defendants maintain that these cases apply only to situations where government employees were retaliated against for the exercise of their First Amendment rights and since plaintiff was not a government employee at the time of the alleged retaliation, this rule does not apply here.

However this rule is not limited to retaliation against government employees only but rather applies in any case where the government retaliates against a person based on the exercise of his or her First Amendment rights.

pretenses." 15 U.S.C. § 1681q. Section 1681a(d) defines a "consumer report" as:

"any written, oral or other communication or any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, ... which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal family or household purposes, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title ..."

Section 1681b outlines four additional circumstances under which a credit reporting agency may furnish a consumer report. These are: (1) when there is a court order, (2) when there is a request from the consumer to whom the report relates, (3) when used in connection with a determination of a consumer's eligibility for a license or other benefit, and (4) when requested by a person who has a legitimate business need for the information in connection with a business transaction involving the consumer.

Defendants present two main arguments in support of their contention that plaintiff has no cause of action under the FCRA.

■ The first is that the information defendants received from the credit bureau was not a "consumer report" under the FCRA because it was not to be used for any of the purposes set out in Section 1681a(d); it was to be used purely in connection with the investigation of plaintiff's claim of financial damages in the first suit against the City and its officials. Since the FCRA is a banking statute and enacted to ensure accuracy and confidentiality in the compiling and dissemination of information used for assessing credit worthiness, defendants contend that their use of the information is not covered by the FCRA.

This argument is unsupported by a reading of the statute. Section 1681a(d) defines a consumer report as information "which is used or expected to be used or collected in whole or in part" for determinations of a person's credit worthiness. The informa-

tion on plaintiff was collected by the credit bureau for the proper purposes under the FCRA and the credit bureau intended and expected that the information would only be used for one of the proper purposes specified in the FCRA. This is evident from the fact that defendants were required to sign a form which stated that they were requesting the information on plaintiff, contained in the report, for a proper reason specified in the FCRA. Thus the information defendants requested and received from the credit bureau on plaintiff was a "consumer report" and its use is therefore proscribed by the FCRA.

■ Defendants' second argument is that they did not violate Section 1681q because they did not obtain the reports under "false pretenses". They contend that there is no false pretense claim where the user discloses the purpose for which he or she is requesting information. However, plaintiff has alleged that defendants represented in an application agreement with the credit bureau that they were going to use the reports for some permissible consumer purpose, thus they did not disclose their true purpose.

Defendants also maintain that a contractual obligation or promise cannot constitute a pretense under a false pretense theory. The courts in various jurisdictions have found that a misrepresentation as to the purpose a consumer report is going to be put does state a claim under this provision. *Hansen v. Morgan,* 582 F.2d 1214, 1219 (9th Cir.1978); *Kennedy v. Border City Savings & Loan Assn.,* 747 F.2d 367, 369 (6th Cir.1984); *Boothe v. TRN Credit Data,* 557 F.Supp. 66, 70–71 (S.D.N.Y. 1982). The court follows this line of cases, and finds that plaintiff has stated a claim under Section 1681q of the FCRA.

## SECTION 1985(3)

■ Section 1985(3) prohibits conspiracies to violate civil rights. 42 U.S.C. § 1985(3). Plaintiff has alleged that defendants conspired to intimidate, harass and retaliate intentionally against him for exercising his First Amendment rights.

**708**

Although plaintiff alleges that his race and political beliefs were factors in the discrimination he is seeking to redress in his original suit, he alleges, for purposes of the present suit, only that defendants retaliated against him for the filing of the prior suit and not specifically due to his race or political affiliation.

The Seventh Circuit has held that in order to state a claim under Section 1985(3) a person must allege racial discrimination. *Grimes v. Smith,* 776 F.2d 1359, 1366 (7th Cir.1985). Since plaintiff fails to allege racial animus, his claim under Section 1985(3) must fail.

### PROSECUTORIAL IMMUNITY

Defendants' final contention is that Assistant Corporation Counsel Hubert is entitled to absolute immunity for his actions performed in defense of the original suit against the City and its officials. The court previously considered these arguments and announced its decision that Hubert was not entitled to absolute immunity in open court on February 13, 1987. Therefore the court need not address this issue again.

### CONCLUSION

Defendants' motion to dismiss Count I of the complaint for failure to state a constitutional deprivation is denied. Defendants' motion to dismiss the Count II FCRA claim is denied. The motion to dismiss the Count III Section 1985(3) conspiracy is granted.

IT IS SO ORDERED.