Julia TAYLOR, as Special Administrator of the Estate of Johnny Taylor, Deceased, Plaintiff,

v.

Officer Efren CASTANEDA, Officer Pamela Burmistrz, and the City of Chicago, a municipal corporation, Defendants.

No. 87 C 9765.

United States District Court, N.D. Illinois, E.D.

June 29, 1990.

Michael S. Baird, Stotis, Chionis, Craven and Baird, Chicago, Ill., for plaintiff.

John F. McGuire, Sharon Baldwin, Judson H. Miner, Chicago, Ill., for defendants.

## ORDER

ALESIA, District Judge.

In October, 1987, plaintiff, Julia Taylor, acting as special administrator of the estate of Johnny Taylor ("Taylor"), filed this two-count action against Chicago police officers Efren Castaneda and Pamela Burmistrz and the City of Chicago ("City"). Count I, the allegations of which are not at issue here, is directed against the two individual officers. In Count I, plaintiff alleges that officers Castaneda and Burmistrz shot Taylor while he was running away, that their use of deadly force was unnecessary, and that their use of deadly force constituted an unreasonable seizure under the Fourth and Fourteenth Amendments, in violation of 42 U.S.C. § 1983.

Count II is directed solely against the City and is the subject of the motion now before the Court. In Count II, plaintiff alleges that the City failed to adequately train its police officers by allowing them to use deadly force where it was not authorized by law, in violation of 42 U.S.C. § 1983. Plaintiff further alleges that the City's "grossly inadequate" training program directly and proximately caused Taylor's death.

In response to plaintiff's complaint, the City filed a motion to dismiss Count II pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion was referred to Magistrate Bucklo for a Report and Recommendation. Magistrate Bucklo recommended that this Court deny the City's motion. The City then filed objections to the Magistrate's Report and Recommendation. This Court has reviewed the parties' underlying briefs, the Magistrate's Report and Recommendation, and the City's objections. For the reasons set forth in this order, we reject the Magistrate's Report and Recommendation, sustain the City's objections, and grant the City's motion to dismiss Count II.

## I. *Plaintiff's Allegations*

In Count II of the complaint, plaintiff alleges that on October 18, 1985, Taylor was at or near his residence at 5316 South Justine in Chicago. On that date, officers Castaneda and Burmistrz were dispatched by the Chicago Police Department to respond to an alleged domestic disturbance, which they were told involved Taylor. Upon the officers' arrival, Taylor tried to flee the area of his residence. The officers then chased Taylor as he attempted to flee, shooting him three times and killing him. According to plaintiff, Taylor's death resulted from the "grossly inadequate training" of the defendant officers.

## II. *Magistrate's Conclusions*

Accepting plaintiff's allegations as true, the Magistrate concluded that Count II of plaintiff's complaint adequately pleaded a policy claim against the City under Section 1983. As a result, the Magistrate recommended that this Court deny the City's motion to dismiss Count II.

## III. *Standard of Review*

Pursuant to 28 U.S.C. § 636(b)(1), this Court must conduct a *de novo* review of the portions of the Magistrate's Report to which the City objects. Consequently, we address the City's objection that the allegations in Count II are insufficient as a matter of law to state a cause of action based on a City policy violating 42 U.S.C. § 1983.

## IV. *Sufficiency of Allegations Contained in Count II*

Plaintiff's "failure to train" claim is comprised of the following allegations:

(1) that the City was required to train, instruct, supervise, control, and discipline its police officers;

(2) that the training provided to the defendant officers was grossly inadequate in that it allowed its officers to use deadly force where it was not authorized under the law; and

(3) that Plaintiff's decedent died as a result of the City's failure to train its officers properly.

In its objections, the City argues that contrary to the Magistrate's findings, Count II fails to allege *facts* which support a reasonable inference that the City had a "policy" of inadequately training its officers in the use of deadly force. Thus, the City contends, plaintiff has failed to meet the standard articulated in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), its progeny, and particularly, this circuit's decision in *Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir. 1985).

The Supreme Court first addressed the issue of municipal liability under Section 1983 in *Monell.* There, the Court concluded that a local government may not be sued under Section 1983 "for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. Rather, only when the agent or employee's injurious acts "may fairly be said to represent official policy" or unwritten custom is the governmental entity liable under Section 1983. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. Thus, the Court soundly rejected the notion of vicarious municipal liability under the doctrine of *respondeat superior.* The Court emphasized, however, that it left the "full contours" of municipal liability for another day. *Monell*, 436 U.S. at 695, 98 S.Ct. at 2038.

Later, in *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985), the Supreme Court specifically addressed the question of whether a single, isolated incident of excessive force by a police officer could establish an official policy or practice sufficient to render a municipality liable under *Monell.* The Court held that where the "policy" relied upon arises by inference from alleged municipal inaction, rather than from

a pronounced policy "consciously chosen" by the municipality, a plaintiff must prove considerably more than a single incident to establish both the requisite fault of the municipality's policymaker and the causal connection between the "policy" and the constitutional deprivation.[1] *Tuttle*, 471 U.S. at 823–24, 105 S.Ct. at 2436.

Finally, the Supreme Court most recently addressed the "failure to train" theory under Section 1983 in *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In *Harris*, the Court was asked to determine whether a municipality could ever be held liable under Section 1983 for constitutional violations resulting from its failure to train municipal employees. Noting the substantial division among the Courts of Appeal as to what degree of fault must be evidenced by a municipality's inaction before it is subject to liability under Section 1983, the Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Harris*, 489 U.S. at ——, 109 S.Ct. at 1204. Reaffirming the principles of *Monell, Tuttle,* and other cases decided under Section 1983, the Court emphasized that "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be held liable for such a failure under § 1983." *Harris*, 489 U.S. at ——, 109 S.Ct. at 1205. The Court also pointed out that the fact "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Harris*, 489 U.S. at ——, 109 S.Ct. at 1206.

1. In her underlying brief in opposition to the City's motion to dismiss, plaintiff attempts to distinguish *Tuttle* from her case. Essentially, plaintiff argues that *Tuttle* is inapplicable to this case because *Tuttle* sets forth the standard of *proof*, as opposed to a standard of *pleading*, a viable claim against a municipality under Section 1983. We disagree. Although the Supreme Court reversed *Tuttle* following a full trial on the merits and, therefore, the Court's discussion focused on the proper standard of proof, the Court nonetheless made it clear that "[t]here must at least be an affirmative link between the training inadequacies alleged, and the particular constitutional violation at issue" to satisfy the policy or custom requirement of *Monell. Tuttle,* 471 U.S. at 824 n. 8, 105 S.Ct. at 2436 n. 8. The same principle applies with equal force to Taylor's case.

Before the Supreme Court decided *Harris*, this circuit, in interpreting *Monell*, had held that a complaint which merely "tracks *Monell's* requirement of official policy with bare allegations cannot stand." *Strauss*, 760 F.2d at 767–68. The court in *Strauss* explained that if it were to allow plaintiffs to plead a *Monell* policy claim without factual allegations to support the claim, then plaintiffs "could file claims whenever a police officer abused them, add *Monell* boilerplate allegations, and proceed to discovery in the hope of turning up some evidence to support the 'claims' made." *Strauss*, 760 F.2d at 768.

In recommending denial of the City's motion to dismiss in this case, the Magistrate relied heavily on *Harris* and appeared to discount *Strauss* based on some of the Court's remarks in *Harris*. In particular, the Magistrate focused on the following observation made by the Court in *Harris:*

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*Harris,* 489 U.S. at ——, 109 S.Ct. at 1205. In a footnote, the Court cited as an example the need to train officers in the constitutional limitations on the use of deadly force. *Harris,* 489 U.S. at ——, 109 S.Ct. at 1205 n. 10.

Relying on these dicta, the Magistrate concluded that in this case, plaintiff's allegations that the City's training of its police officers was "grossly inadequate," without more, "[fall] squarely within the example of 'deliberate indifference' suggested by the Supreme Court" in *Harris*. Magistrate's Report and Recommendation at 4. Although the Magistrate conceded that the Seventh Circuit's decision in *Strauss* requires that a Section 1983 plaintiff plead some fact or facts tending to support an allegation of the existence of a municipal policy, she pointed to dicta in *Strauss* which indicated that under certain circumstances, inaction by the City *may be* " 'sufficiently egregious that plaintiff's injury alone suggests an established policy.' " Magistrate's Report and Recommendation at 5 (citing *Strauss*, 760 F.2d at 769) (emphasis supplied). Perceiving this to be such a case, the Magistrate recommended denial of the City's motion to dismiss. Magistrate's Report and Recommendation at 5.

■ We respectfully disagree with the Magistrate's conclusions for several reasons. First, we note that while *Harris* and *Strauss may* contemplate that an exceptional case *may* exist, we do not believe that plaintiff in this case has presented facts which are so egregious that they "obviously" suggest that Taylor died as a result of a "grossly inadequate" training program on the part of the City.

Second, we do not believe that *Harris* in any way undermines the holding of *Strauss* or relaxes the pleading requirements of *Strauss*. Even after *Harris*, a plaintiff must "plead facts to support general allegations that it is indeed the policy of the City to inadequately train its officers." *Johnson v. City of Chicago,* 711 F.Supp. 1465, 1472 (N.D.Ill.1989) (discussing *Harris* and *Strauss* ). Moreover, *Harris* clearly states that in order for municipal liability to attach, "the identified deficiency in a city's training program must be closely related to the ultimate injury." *Harris,* 489 U.S. at ——, 109 S.Ct. at 1206. *See also Erwin v. County of Manitowoc,* 872 F.2d 1292, 1298 (7th Cir.1989) (training failure must evidence "deliberate indifference" to rights of citizenry to constitute an actionable § 1983 "policy or custom.") Here, other than merely speculating that the officers' "grossly inadequate training" caused Taylor's death, plaintiff establishes no "affirmative link" between an allegedly inadequate city training program and Taylor's death. *See Tuttle,* 471 U.S. at 823, 105 S.Ct. at 2436.

Finally, consistent with *Monell* and its progeny, courts within this circuit and district have repeatedly held that the mere allegation of a single, unconstitutional act by a municipal employee will not support an inference that the employee acted pur-

suant to an official policy or unwritten custom. *See Strauss,* 760 F.2d at 767; *Washington v. Lake County, Illinois,* 717 F.Supp. 1310, 1313 (N.D.Ill.1989); *Grays v. Bartelt,* 714 F.Supp. 293, 295 (N.D.Ill. 1989); *Gibson v. City of Chicago,* 701 F.Supp. 666, 673 (N.D.Ill.1988).

In this case, plaintiff has failed to allege even a scintilla of evidence to support her allegation that a City policy or custom caused Officers Castaneda and Burmistrz to use deadly force unconstitutionally. Obviously, plaintiff points to no explicit unconstitutional policy promulgated by the City. Nor does she even point to a pattern of similar conduct which would raise an inference that City officials knew or should have known that the City's training program posed a substantial risk that its officers would use deadly force unconstitutionally and, thus, that they acted with "deliberate indifference."[2] Instead, without the benefit of any factual support, plaintiff summarily alleges that such a policy exists.

Although this Court must accept all facts fairly alleged in plaintiff's complaint as true when deciding a motion to dismiss under Rule 12(b)(6), we are not obligated to assign any weight to unsupported conclusions of law. *See Gray v. County of Dane,* 854 F.2d 179, 182 (7th Cir.1988). Here, plaintiff's allegations regarding a purported City policy of "grossly inadequate training" are nothing more than bare conclusions. Such boilerplate allegations of a *de facto* official policy based on a single incident of alleged wrongdoing cannot stand under *Monell* or its progeny. *See Johnson,* 711 F.Supp. at 1472 (citing other cases); *Rodgers v. Lincoln Towing Service, Inc.,* 596 F.Supp. 13, 20 (N.D.Ill. 1984), *aff'd,* 771 F.2d 194 (7th Cir.1985).

Contrary to plaintiff's suggestion, her failure to support her "policy" allegations with facts is not excused because she has not yet had the opportunity to conduct discovery on the issue. As stated by the court in *Rodgers:*

[A] plaintiff wishing to assert such a claim must plead facts tending to show a pattern of illegal conduct going beyond a single incident of wrongdoing. [Citations omitted]. This is nothing more than what is required by rule 11. If a lawyer knows of no instances of similar wrongdoing beyond his client's case and otherwise has no reasonable factual basis for thinking that a de facto municipal policy exists which caused his client's injury, he has no business attaching a conclusory allegation of 'policy' to his client's complaint on the off chance that he may be able to dredge up some factual support for that allegation if the court will permit him to conduct exhaustive discovery. *Rodgers,* 596 F.Supp. at 20.

Applying these standards to the complaint before us, plaintiff's allegation regarding the City's "grossly inadequate training" of its officers fails because it lacks the requisite specificity under *Monell, Tuttle, Harris,* and the other cases we have cited. Likewise, plaintiff's allegation that the City was required to train and control its police officers is deficient because it does not focus upon the adequacy of the program and whether that program can justifiably be said to represent city policy. Finally, plaintiff's complaint is barren of any facts which raise the inference that City officials acted with "deliberate indifference" or that they knew or should have known that the City's police training program posed a substantial risk that its officers would abuse their power to use deadly force when dealing with suspected criminals. Accordingly, Count II of plaintiff's complaint cannot withstand the City's motion to dismiss.

## V. *Conclusion*

For the reasons outlined, this Court rejects the Magistrate's Report and Recommendation, sustains the City objections, and grants the City's motion to dismiss Count II of plaintiff's complaint.

---

**2.** We remain unpersuaded by the argument, summarized in footnote 2 of the Magistrate's Report and Recommendation, that because both officers shot at Taylor, the officers' action cannot be characterized as "a single incident."