Clifton CAMPBELL, Dolcy Campbell, Ricardo Campbell, Paul Campbell, Kadeisha Campbell and Leadership Council for Metropolitan Open Communities, a not for profit Illinois organization, Plaintiffs,

v.

CITY OF BERWYN, an Illinois municipal corporation, and Frank Kravcik, Superintendent of Police of the City of Berwyn, Illinois, Defendants.

No. 92 C 2107.

United States District Court, N.D. Illinois, E.D.

March 5, 1993.

Clifford Zimmerman, DePaul University College of Law, Edward A. Voci, Leadership Council for Metropolitan etc., Chicago, IL, for plaintiffs.

Larry Zdarsky, Berwyn, IL, Robert Ellch, Raymond Hauser, Scariano, Kula, Ellch & Himes, Chicago Heights, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiffs Clifton, Dolcy, Ricardo, Paul and Kadeisha Campbell brought this suit against defendants City of Berwyn and Frank Kravcik, Superintendent of Police of Berwyn, alleging that defendant Kravcik terminated police protection of their home from racially motivated attacks because of plaintiffs' race in violation of their constitutional rights to equal protection of the laws under 42 U.S.C. § 1983. Plaintiffs also allege that these unlawful actions violated their civil rights under 42 U.S.C. § 1982, and their rights to Fair Housing under 42 U.S.C. §§ 3604(a), 3604(b), & 3617. Plaintiff Leadership Council For Metropolitan Open Communities (Council) alleges that as a result of defendants Kravcik and City of Berwyn's termination of police protection of the Campbells, the Council's effort to provide counselling and assistance to minority homeseekers and to eliminate discrimination in housing have been hampered in violation of 42 U.S.C. §§ 1982, 3604(a), 3604(b), & 3617.

Pursuant to Federal Rule of Procedure 12(b)(6), defendants have brought this motion to dismiss Counts I–III of plaintiffs' complaint for failure to state a claim for which relief can be granted. For the reasons set forth below, defendants' motion is granted in part and denied in part.

## BACKGROUND

According to the allegations in plaintiffs' complaint, plaintiffs Clifton and Dolcy Campbell, a black couple, purchased a home in Berwyn, Illinois, and moved into that home with their three children, Ricardo, Paul and Kadeisha, on Sunday, March 1, 1992. Berwyn has a population of approximately 43,000, of which approximately 50 individuals are black. No other blacks live on the same street as plaintiffs.

On March 2, 1992 someone threw a rock through a window of plaintiffs' home. This incident was reported to the Berwyn police. On the evening of March 4, 1992, the front porch of plaintiffs' home was doused with gasoline and set on fire. The Berwyn police and fire departments responded to the fire. At that time, the police believed the fire was a racially motivated attack. On March 5, 1992, plaintiffs publicly stated that they were going to move out of their Berwyn home because of their fears of further racially motivated attacks, and placed a "For Sale" sign in front of their home. Shortly after plaintiffs made this public statement, the Berwyn police began providing the family's home with 24 hour police protection. This protection included the use of two marked squad

cars, with one officer stationed in the front and the other in the rear of the home.

Beginning on March 9, 1992, plaintiffs began receiving racially motivated threatening telephone calls and "hang up" calls. Despite these phone calls, plaintiffs decided to stay in their house and on March 12, 1992, removed the "For Sale" sign from the front of their home. Plaintiffs continued receiving racially motivated threatening telephone calls during this time. On one occasion, Dolcy Campbell also reported to the police that she had been followed to work.

On March 16, 1992, Kravcik informed plaintiffs' counsel that the on-site police protection plaintiffs were receiving would terminate on March 19, 1992. When plaintiffs' counsel suggested that Kravcik should seek assistance from the Illinois State Police and the Cook County Sheriff's Office, Kravcik stated that plaintiffs could contact them. After plaintiffs' counsel contacted these and other governmental agencies, Kravcik decided not to terminate their on-site police protection, but to reduce it from 24 to 12 hour protection as of March 19, 1992.

Plaintiffs continued to receive threatening telephone calls through March 23, 1992. On March 25, 1992, Kravcik informed plaintiffs, through counsel, that their on-site protection would terminate on March 26, 1992. After this date, Kravcik told them that the Berwyn police would instead provide two video cameras for plaintiffs' home. One, to be installed by the rear garage, would send a live image to the Berwyn police department, and the other, to be installed inside the front of plaintiffs' home, would record but not transmit. As of the filing of this Complaint only the non-transmitting camera in front of the plaintiffs' home had been installed. Plaintiffs were informed by Kravcik that a court order was necessary before the transmitting video camera could be installed and that it had not yet been obtained.

### THE MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to attack an action based upon the sufficiency of the pleadings, rather than upon the merits of the claim alleged. Fed.R.Civ.P. 12(b)(6). A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). When considering a motion to dismiss for failure to state a claim pursuant Rule 12(b)(6), the court must consider all allegations in the complaint in the light most favorable to the plaintiffs, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and take all well-pleaded facts as true. *Ed Miniat, Inc. v. Globe Ins. Group, Inc.*, 805 F.2d 732, 733 (7th Cir.1986).

■ In Count I of the complaint, plaintiffs allege that defendant Kravcik, in his individual and official capacities, terminated police protection of their home because of their race, in violation of their constitutional rights to equal protection of the laws under 42 U.S.C. § 1983. Defendants correctly assert that a suit against a municipal officer acting in his or her official capacity is the same as a suit against the municipality. *Hafer v. Melo*, —— U.S. ——, —— ——, 112 S.Ct. 358, 361–2, 116 L.Ed.2d 301 (1991); *Yeksigian v. Nappi*, 900 F.2d 101, 103 (7th Cir.1990). Therefore, to the extent that plaintiffs are suing Kravcik in his official capacity, it is as if they are suing the City of Berwyn. To succeed on a Section 1983 claim against the City of Berwyn, plaintiffs must establish that they were injured, and that some municipal policy, custom, or practice proximately caused this injury. *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985). Plaintiffs must make specific factual allegations to support their claim of a municipal policy. *Id.* Mere conclusory allegations of a municipal policy will not suffice. *Id.*

Defendants assert that plaintiffs have failed to plead the requisite municipal policy, custom, or practice. In their complaint, plaintiffs allege that they were injured as a result of Kravcik's decision to remove the on-site police protection on the basis of plaintiffs' race. However, plaintiffs' complaint does not suggest that Kravcik's decision was a municipal policy, custom or practice. In fact, plaintiffs have made no attempt whatso-

ever to allege the requisite municipal policy, custom or practice necessary to state a claim against Kravcik in his official capacity.[1] Therefore, defendants' motion to dismiss plaintiffs' equal protection claim against Kravcik in his official capacity in Count I of the complaint is granted.

■ Defendants also argue that plaintiffs have not stated a valid claim in Count I against Kravcik in his individual capacity. To bring an action against a defendant in his individual capacity, a plaintiff must show that the defendant (1) acted under color of law, and (2) caused the deprivation of a federal right. *Hafer*, —— U.S. at ——, 112 S.Ct. at 362. In this case, plaintiffs allege that Kravcik, acting under the color of law, intentionally deprived them of police protection because they are black, in violation of the Equal Protection Clause. Defendants argue that plaintiffs' claim is deficient because they have failed to allege that Kravcik treated non-blacks differently in similar situations.

In *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), the Supreme Court determined that "proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Id.* at 265, 97 S.Ct. at 563. The Court further stated that both circumstantial and direct evidence of intent can be considered when determining whether an invidious discriminatory purpose was a motivating factor of an official action. *Id.* at 266, 97 S.Ct. at 563–64. While this court can consider the discriminatory impact of Kravcik's actions, proof of discriminatory impact is not a necessary component of a valid Equal Protection claim as defendants suggest. As the Supreme Court noted in *Arlington*, a single invidiously discriminatory government act is not necessarily immunized "by the absence of such discrimination in the making of other comparable decisions." *Id.* at 266 n. 14, 97 S.Ct. at 564 n. 14. Therefore, contrary to defendants' contention, plaintiffs need not allege discriminatory impact—in the form of allegations that non-blacks re-ceived the desired level of police protection in circumstances similar to those in which plaintiffs did not receive such protection—in order to establish a valid claim here.

■ This court finds that plaintiffs sufficiently allege the existence of discriminatory intent to state a valid Equal Protection claim. Plaintiffs allege in their complaint that Kravcik instituted 24 hour police protection of plaintiffs' house as a result of a racially motivated attack shortly after plaintiffs publicly announced their intention to move. However, shortly after plaintiffs' removed the "For Sale" sign from the front of their home, Kravcik decided to terminate this protection. Plaintiffs allege that this decision to remove their police protection was because of their race. *See* Complaint at ¶¶ 20, 23, 27, 42–43. Considering these allegations in a light most favorable to the plaintiffs as is required on a motion to dismiss, this court finds that plaintiffs present sufficient evidence that Kravcik acted with discriminatory intent when he terminated plaintiffs' on-site police protection to withstand defendants' motion to dismiss this portion of Count I. Therefore, defendants motion to dismiss the Section 1983 claim against defendant Kravcik in his individual capacity in Count I is denied.

■ In Count II, plaintiffs allege that Kravcik's decision to terminate their police protection was based upon their race, and denied plaintiffs: (1) the use, enjoyment and availability of their home in violation of 42 U.S.C. § 3604(a) ("Section 3604(b)"); (2) the services and facilities provided in connection with residency in Berwyn, Illinois in violation of 42 U.S.C. § 3604(b) ("Section 3604(b)"); (3) their right to hold property in violation of 42 U.S.C. § 1982 ("Section 1982"); and (4) their right to fair housing in the absence of racial discrimination in violation of 42 U.S.C. § 3617 ("Section 3617"). Defendants move to dismiss Count II, arguing that to establish a valid Fair Housing Act claim, plaintiffs must adequately allege that under similar circumstances, non-blacks would have received the level of police protection that plaintiffs desire.

---

1. Plaintiffs contend that since they do not intend to sue Kravcik in his official capacity, they need no establish the existence of a discriminatory municipal policy, custom or practice. *See* Plaintiffs' Response to Defendants' Motion to Dismiss at 7 n. 5.

■ Generally, to establish a prima facie case of racial discrimination under the Fair Housing Act, one must demonstrate that the disputed actions were racially motivated or had a discriminatory effect. *Betsey v. Turtle Creek*, 736 F.2d 983, 986 (4th Cir. 1984); *Familystyle of St. Paul v. City of St. Paul*, 728 F.Supp. 1396, 1401 (D.Minn.1990). However, members of a discrete minority, such as plaintiffs, must only allege that a defendant's actions had a discriminatory impact on them as individuals. *Betsey*, 736 F.2d at 987. Therefore, contrary to defendants assertions, plaintiffs' failure to allege that non-blacks would have received the desired level of police protection under similar circumstances does not warrant the dismissal of their Fair Housing claims.[2]

■ With respect to their Section 3604(a) claim, plaintiffs must allege that defendants' discriminatory actions, or the discriminatory effects of such actions, affect the availability of housing to them. See *Southend*, 743 F.2d at 1210. Such actions must have a direct impact on plaintiffs' ability, as potential homebuyers or renters, to locate in a particular area or to secure housing. *Id.* In *Southend*, plaintiffs argued, *inter alia*, that in predominately black areas, where the County held tax deeds, the County did not comply with its statutory obligation to maintain its properties. Plaintiffs alleged "that the County's breach of its obligations diminished the value of the their own properties in these neighborhoods areas, and prevented them from securing loans and making other contracts related to their properties." *Id.* at 1208. The *Southend* court dismissed the plaintiffs' Section 3604(a) claim after determining that this section did not protect plaintiffs' intangible interests in already-owned

property. *Southend*, 743 F.2d at 1210. These intangible interests included: (1) the prevention of waste on the properties involved; (2) the ensurance that the premises were maintained in good condition and repair; (3) the preservation of the property; and (4) the protection of the public's safety with respect to the property. *Id.* at 1209.

■ In the instant case, plaintiffs base their Section 3604(a) claim on Kravcik's decision to terminate their police protection. However, this claim cannot withstand defendants' motion to dismiss because Kravcik's decision did not affect plaintiffs' ability to move to Berwyn, Illinois and secure housing. Plaintiffs had already moved and secured housing in Berwyn before Kravcik's decision to terminate on-site police protection became an issue. Furthermore, like the *Southend* homeowners' interest in the "protection of the public's safety with respect to property," plaintiffs' interest in on-site police protection is an intangible interest in already-owned property. Therefore, under *Southend*, plaintiffs' interest in on-site police protection is not protected under Section 3604(a). Since plaintiffs fail to state a valid claim under Section 3604(a), defendants' motion to dismiss that portion of Count II is granted.

■ Plaintiffs also claim that Kravcik's decision to terminate their police protection violated their rights under Section 3604(b). Section 3604(b) of the Fair Housing Act prohibits discrimination in the provision of services or facilities in connection with the sale or rental of a dwelling because of race. 42 U.S.C. § 3604(b). As the 7th Circuit explained in *Southend*, this "subsection applies to services generally provided by governmen-

---

2. Defendants fail to address how this argument affects plaintiffs' claim under Section 1982. Section 1982, which was derived from Section 1 of the Civil Rights Act of 1866, ensures that all citizens have the same right as white citizens to "inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. To state a claim under Section 1982, plaintiffs' allegations must demonstrate that the defendants' conduct impaired their property rights." *Southend Neighborhood Imp. v. County of St. Clair*, 743 F.2d 1207, 1211 (7th Cir.1984). Defendants have not presented this court with any evidence demonstrating that plaintiffs must al-

lege that non-blacks would have received the desired level of police protection under similar circumstances, in order to state a valid Section 1982 claim.

Plaintiffs have alleged that as a result of Kravcik's decision to terminate their on-site police protection, they will be subjected to further racially motivated attacks, which would impair their right to hold personal property. Such allegations are sufficient to establish a valid Section 1982 claim and defendants have not presented any evidence to the contrary. Therefore, defendants' motion to dismiss plaintiffs' Section 1982 claim in Count II is denied.

tal units such as police and fire protection or garbage collection." 743 F.2d at 1210. Under this reading of the statute, plaintiffs' allegation regarding the termination of their police protection because of race is sufficient to state a valid claim under Section 3604(b). Therefore, defendants' motion to dismiss this portion of Count II is denied.

Plaintiffs further claim that Kravcik's decision to terminate their police protection interfered with the enjoyment of the their rights to fair housing in violation of Section 3617. Section 3617 makes "it unlawful to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed ... any right protected by" sections 3603–3606 of the Fair Housing Act. 42 U.S.C. § 3617. Plaintiffs' have alleged that Kravcik's decision was based on their race, and interfered with the enjoyment of their right to police protection. *See* Complaint at ¶¶ 43, 52, 54. Since discrimination in the provision of police protection is prohibited by Section 3604(b) of the Fair Housing Act, plaintiffs state a valid claim under Section 3617. Therefore, defendants' motion to dismiss that portion of Count II is denied.

## COUNT III—STANDING

■ In Count III, plaintiff Council alleges that defendants' actions damaged and impaired its effort to provide housing, counselling and assistance to minority homeseekers, impaired its ability to eliminate discrimination, and, consequently, unnecessarily drained its resources. Defendants move to dismiss this claim, asserting that the Council has failed to allege a sufficient interest in the Campbells' claims and that the Council does not have standing in its own right under the Fair Housing Act.

Defendants primarily rely on *Leadership Council For Metropolitan Open Communities v. Town of Cicero*, 1985 WL 1650 (N.D.Ill. May 31, 1985), to support their arguments for dismissal of Count III. In *Town of Cicero*, the plaintiff alleged that:

> As a result of Defendant's unlawful actions and denial of housing to black persons the Leadership Council, on a continuing basis, has been impaired in its efforts to provide housing counseling and assistance to minority homeseekers, and to eliminate discrimination in housing, with a consequent drain on its resources.

*Id.* The Court dismissed these general allegations because they did not contain any allegations of the Leadership Council's specific activities in the Town of Cicero, and thus did not demonstrate a sufficient nexus between the Leadership Council and the defendants. *Id.* Like *Town of Cicero*, the Council's complaint here does not contain allegations of any specific activities that demonstrate the requisite nexus to defendant Kravcik's actions. The Council states in its brief that it was involved in discussions and negotiations with Kravcik, and communications statewide to convince defendants Kravcik and the City of Berwyn not to reduce the Campbells' police protection.[3] However, this court cannot rely on such statements because this court is bound to only review plaintiffs' complaint at this stage of the litigation. *See* Fed.R.Civ.P. 12(b)(6).

Defendants further argue that the Council lacks standing to sue in its own right because it fails to allege a personal stake in the outcome of the controversy that would warrant the invocation of federal jurisdiction. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 377–78, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982). In *Havens*, the Supreme Court indicated that if the alleged discriminatory practices had "perceptibly" impaired the agency's ability to provide counseling and referral services for low and moderate-income homeseekers, the agency would have suffered an injury in fact sufficient to give it standing under the Fair Housing Act. *Id.* The Seventh Circuit has interpreted *Havens* as only requiring a fair housing agency to show that its time and money have been deflected from counseling to legal efforts directed against discrimination. *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1526 (7th Cir.1990).

This court agrees with defendants that even under this low standard, the Council has failed to adequately establish that it has

---

3. *See* Plaintiffs' Response to Defendants' Motion to Dismiss at 14.

standing to sue under the Fair Housing Act. Unlike the agency in *Dwivedi* which had incurred costs by hiring testers as part of its investigation into the alleged discriminatory practices, the Council fails to allege that it has taken the requisite action which demonstrates a perceptible injury. As explained above, the Council's statements in its brief that it was involved in discussions and negotiations with Kravcik, and communications state-wide to convince defendants Kravcik and the City of Berwyn not to reduce the Campbells' police protection cannot substitute for adequate allegations in the complaint. *See* Fed.R.Civ.P. 12(b)(6). Since, the council fails to allege a sufficient interest in the Campbell's claim or otherwise establish that it has standing to sue under the Fair Housing Act, defendants' motion to dismiss Count III of the complaint is granted.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted in part and denied in part.