James **HAMMOND**, Plaintiff,

v.

**TOWN OF CICERO, Police Officer Lawrence Sacino, Police Officer Clarence Plana, Police Officer Randy Voss, Police Officer Darlene Sobczak, individually, and in their official capacities, Defendants.**

No. 91 C 8339.

United States District Court, N.D. Illinois, E.D.

March 11, 1993.

Lisa I. Vessey, Lawrence Walner & Associates, Ltd., Chicago, IL, Kenneth John Wadas, Chicago, IL, for plaintiff.

Daniel S. Hefter, Darcy L. Dulbis, Shannon Susan Sullivan, Hefter & Radke, W. Robert Blair, Chicago, IL, Gino P. Naughton, Nicholas Geanopoulos, Edward R. Vrdolyak, Chicago, IL, for defendants.

### MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff James Hammond (Hammond) brings this action against defendants Town of Cicero (Cicero) and four of its police officers, Lawrence Sacino (Sacino), Clarence Plana (Plana), Randy Voss (Voss), and Darlene Sobczak (Sobczak). Hammond alleges that defendant police officers deprived him of his federal constitutional rights, and certain state law rights, by arresting him without probable cause, by using unreasonable force when taking him into custody, by deliberately denying him necessary medical attention, and by maliciously seeking charges against him for crimes he did not commit. He also alleges that Cicero, through custom and policy, encouraged the officers to act as they did. Cicero now moves to dismiss the constitutional claims against it and to dismiss plaintiff's demand for punitive damages. Its motion to dismiss the constitutional claim is denied but its motion to dismiss plaintiff's demand for punitive damages is granted.

In assessing Cicero's motion this court must assume the truth of Hammond's factual allegations. Hammond was arrested at Luciano's restaurant and bar (the restaurant) in Cicero, Illinois, at around 1:00 a.m. on January 1, 1991. He had gone there with his parents and other members of his family to usher in the New Year. He claims to have only the dimmest comprehension of the events that led to his arrest. According to Hammond, several men unknown to him confronted him in the washroom and, without provocation, began hitting him. They knocked him to the floor, punched him, and kicked him. His mother and father also were injured when they came to his aid.

During the fight a restaurant employee telephoned the Cicero Police Department requesting assistance, and Officers Sacino, Plana, Voss, and Sobczak arrived sometime before 1:30 a.m.. Plaintiff's parents pointed out the men who had attacked them, and according to plaintiff it was obvious from the cuts and blood on his face, and from his parents' condition, that all three had been beaten as claimed. Nevertheless, the officers arrested plaintiff without arresting any of the other men. He alleges that it also was obvious that he needed immediate medical attention, but the officers took him to the Cicero police station rather than the hospital.

Hammond asserts that the officers chose to arrest him, rather than the people who started the fight, because the officers and other Cicero officials had a longstanding illegal arrangement with the restaurant, which involved the payment of bribes in exchange for cooperation in law enforcement matters. The cooperation is said to have included the

**514**

overlooking of liquor control violations, book-making operations, and other offenses committed by the owners, employees, and patrons of the restaurant. Hammond believes that at least one of the perpetrators of the attack was connected in some way with the owners of Luciano's.

According to Hammond, defendant police officers took him into custody and assaulted him, twisting his arms, beating him, kicking him, and striking him with a nightstick. He asserts that the force used against him was grossly out of proportion to what was needed. The excessive force abated temporarily, he claims, when his sister began taking photographs of the incident, but the officers resumed beating him once they had brought him inside the police station. He alleges that the officers detained him for several hours without providing medical attention despite repeated pleas from himself and his family.

Hammond was charged with several misdemeanor counts of battery. He claims that the charges were meritless, trumped up to make him suffer the expense of defending himself, to humiliate him, and to cover up the officers' illegal acts. He was acquitted on four charges of battering the police officers but was found guilty on another charge of battering a paramedic. The court in the case agreed to impose a period of court supervision, a disposition that eventually resulted in a non-conviction.

Hammond's complaint reveals that he is not the first person to accuse Cicero or its police officers of improprieties. He states that the town and its officers have been sued for civil rights violations at least nine times since 1974, and that other similar accusations have been made during that period but have not resulted in lawsuits. He also states that Cicero officials have been embroiled in bribery scandals in the past, some of which have resulted in criminal and civil court proceedings.

### DISCUSSION

Cicero moves to dismiss count VIII of Hammond's complaint, which states that the town is liable under 42 U.S.C. § 1983 for policies and customs that allegedly encouraged illegal behavior by its officers. *See*

*Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690–691, 98 S.Ct. 2018, 2035–2036, 56 L.Ed.2d 611 (1978). According to Cicero, Hammond has not alleged facts from which a factfinder reasonably could infer an official town policy or custom capable of causing the behavior ascribed to Sacino, Plana, Voss, and Sobczak. Cicero argues that Hammond's references to hearsay accusations of police misconduct, and to past court cases involving town officials, are insufficient to support a claim under *Monell*.

In *Monell*, the United States Supreme Court held that municipalities may not be held liable under 42 U.S.C. § 1983 solely on a theory of *respondeat superior*. *Id*. at 691, 98 S.Ct. at 2036. Unauthorized unconstitutional acts by a municipal employee will not implicate the municipality. The employee may be liable under § 1983, but the municipality will not be called upon to share the blame. *Monell* also stated, however, that a plaintiff who shows that municipal policy or custom caused the employee's unconstitutional act may recover directly from the municipality. *Id*. Hammond claims that the four arresting officers used excessive force and made false charges against him because they were following two distinct, and unconstitutional, town policies. He claims that Cicero had both a general policy of ignoring police misconduct and a particular policy, paid for with bribes, of siding with Luciano's restaurant in law enforcement matters.

Until the Supreme Court issued its decision in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), plaintiffs asserting certain types of *Monell* claims in the Seventh Circuit were subject to a heightened pleading requirement. Under *Strauss v. City of Chicago*, a complaint that tracked the *Monell* requirement of official policy or custom with "bare allegations" could not survive "when the policy identified [was] nothing more than acquiescence in prior misconduct." 760 F.2d 765, 767 (1985). Hammond might have had difficulty meeting the *Strauss* standard. He points out that several complaints had been

filed against the Cicero police department prior to his arrest but, under *Strauss*, "the number of complaints filed, without more," would have indicated "nothing." *Id.* at 769. *Cf. Williams v. City of Chicago*, 658 F.Supp. 147, 155 (N.D.Ill.1987) (holding that an official policy of neglect concerning a particular officer could be inferred from the fact that a much higher number of complaints were filed on average against that officer than were filed against other officers).

The heightened pleading requirement established in *Strauss* had the positive effect of eliminating unsustainable *Monell* claims, but some courts criticized it because it demanded allegations of specific facts by plaintiffs who, prior to discovery, may have had no way of knowing them. *See e.g., Payne v. City of Lasalle*, 610 F.Supp. 606, 607–08 (N.D.Ill. 1985). Normally, plaintiffs need not plead specific facts in order to survive motions to dismiss. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The general rule is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Id.* at 46–47, 78 S.Ct. at 102–103. *See also Means v. City of Chicago*, 535 F.Supp. 455, 458–60 (N.D.Ill.1982) (applying the *Conley* standard to *Monell* claims), *questioned in Strauss*, 760 F.2d at 769–70. Under *Leatherman*, district courts may no longer impose heightened pleading requirements on plaintiffs asserting *Monell* claims. "[F]ederal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Leatherman*, —— U.S. at ——, 113 S.Ct. at 1163. If a plaintiff submits a *Monell* claim that satisfies both the traditional *Conley* pleading requirements and Fed.R.Civ.P. 8(a)(2), which requires only "a short and plain statement of a claim showing that the pleader is entitled to relief," then the plaintiff is entitled to advance that claim in court. Hammond therefore may proceed with his claim that Cicero's lax attitude toward police brutality by its officers resulted in the violation of his constitutional rights.

As noted, Hammond does not stop at accusing the town of following a custom of "acquiescence in prior misconduct," as was alleged in *Strauss*. 760 F.2d at 767. Hammond suggests that the "authorized decisionmakers" in the Cicero police department chose "a course of action tailored to a particular situation" that they knew to be unconstitutional. *Pembaur v. City of Cincinatti*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). By asserting that the arresting officers and their superiors had accepted bribes from the owners of Luciano's restaurant in exchange for official favors, Hammond's complaint extends well beyond the typical "boilerplate" claims addressed in *Strauss*, in which plaintiffs offer examples of employees' misconduct and argue that top officials "must have known" about their employees' propensities for committing constitutional violations. Hammond does not claim that the supervisors must have known, or should have known, about the Luciano's bribery scheme. He claims that they did know about the scheme and, indeed, that they participated in it. Such allegations may be hard to support with solid evidence but, even under *Strauss*, plaintiffs were never required to submit evidence at the pleading stage of litigation. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1522 (7th Cir.1990).

Even before *Leatherman*, the Seventh Circuit had discouraged trial courts from applying the *Strauss* rule too strictly. *Strauss* was not to be construed as authorizing application of the summary judgment standard to motions to dismiss. *Gibson*, 910 F.2d at 1520–23. And, significantly, *Strauss* was not to be read as calling for dismissal of complaints devoid of extensive factual allegations when the complaints alleged that policymakers had actual knowledge of the constitutionally violative behavior at issue. *Sivard v. Pulaski County*, 959 F.2d 662, 668–69 (7th Cir.1992); *Gibson*, 910 F.2d at 1522 n. 20. Thus, by alleging that town policymakers actually knew about the officers' arrangement with Luciano's, Hammond might have satisfied even the uncompromising pleading requirements that formerly applied to *Monell* claims in this circuit.

Cicero attacks plaintiff's *Monell* claim on the rationale that it encompasses only one unconstitutional event. Concededly, it is entirely possible that the town's alleged relationship with Luciano's never deprived anyone other than Hammond of his or her constitutional rights. Plaintiff makes no references to any other incidents involving the restaurant and the police. When top policymakers are involved, however, only one incident is required to make out a claim under *Monell*. *Pembaur*, 475 U.S. at 480, 106 S.Ct. at 1298; *Malak v. Associated Physicians, Inc.*, 784 F.2d 277 (7th Cir.1986); *Sivard*, 959 F.2d at 668. Had Hammond accused only the lower-level, arresting officers of taking bribes, *Strauss* probably would have required proof of more than one incident, but that is not what Hammond has alleged.

Hammond's complaint contains one omission that might have doomed his *Monell* claim under the old standard. Proof of a single incident of unconstitutional activity is sufficient to impose liability under *Monell* only if the activity was caused by a municipal decision which "can be attributed to a municipal policy maker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 824, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (plurality opinion). Hammond alleges that top officials knew about the alleged bribery scheme but he does not state who those officials were. An accusation of public corruption without a name attached to it can be extremely burdensome for a municipality to defend and, given the general approach taken in this circuit toward municipal liability under § 1983, such an indefinite accusation might not have sufficed to support a *Monell* claim prior to *Leatherman*. However, now that district courts are barred from considering the burden of litigation on defendant municipalities when considering motions to dismiss *Monell* claims, Hammond must be permitted to proceed with his claim that a municipal policy of favoring Luciano's in law enforcement matters caused four officers to violate his constitutional rights. *See Leatherman*, —— U.S. at ——, 113 S.Ct. at 1161–62.

Cicero also moves to dismiss plaintiff's demand for punitive damages against it. Municipalities may not be subject to punitive damage awards pursuant to § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Plaintiff points out that a municipality still may be liable to pay punitive damage awards against an individual defendant if the municipality is required under state law to indemnify the individual defendant. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1271 (7th Cir. 1984). In Illinois, however, municipalities may not indemnify individual defendants for punitive damage awards against them. Ill. Rev.Stat. ch. 24, ¶ 1–4–6; ch. 85 ¶ 2–302. Plaintiff's demand for punitive damages against Cicero is therefore dismissed.

### CONCLUSION

Cicero's motion to dismiss plaintiff's *Monell* claim is denied, but its motion to strike plaintiff's demand for punitive damages against it is granted.