**Mary Joan WERTHMAN, Plaintiff,**

v.

**ILLINOIS DEPARTMENT OF MENTAL HEALTH AND DEVELOPMENTAL DISABILITIES, Marva Arnold and Ivan Pavkovic, in their individual and official capacities, Defendants.**

No. 93 C 903.

United States District Court, N.D. Illinois, E.D.

Aug. 24, 1993.

Susan Ellyn Einspar–Wayne, Cahill, Einspar–Wayne & Associates, Hinsdale, IL, for plaintiff.

Mary Ellen Coghlan, IL Atty. General's Office, Chicago, IL, for defendants.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Mary Joan Werthman (Werthman) brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, under 42 U.S.C. §§ 1983 and 1985, and under Illinois law against her employer, defendant Illinois Department of Mental Health and Developmental Disabilities (DMH/DD), and two of its agents, defendants Marva Arnold (Arnold) and Ivan Pavkovic (Pavkovic). Werthman alleges that they discriminated against her (1) because she was suspected of releasing documents to the public critical of DMH/DD practices, and (2) because she is a white female. Defendants now move to dismiss the complaint. Their motion is granted in part and denied in part.

## BACKGROUND

The court assumes the truth of the facts asserted in plaintiff's complaint.

Plaintiff was a mental health professional at the Read Mental Health Facility, an institution operated by DMH/DD. In late 1991 a disciplinary document detailing patient abuse by the Read staff was leaked to an independent public interest group. That disclosure and some other incidents that had resulted in negative publicity about Read prompted the Governor's office to order an investigation. The director, the deputy director and the medical director all resigned shortly thereafter, and DMH/DD decided that the Read hierarchy would have to be reorganized.

Arnold was appointed acting superintendent of Read, even though plaintiff was more qualified. At the same time that she was denied the acting superintendent post plaintiff was told that she was suspected of leaking the disciplinary document. In her complaint plaintiff neither admits nor denies having done so. About two months later Arnold terminated plaintiff's position as assistant superintendent in charge of adult units. Another Read administrator, who was male, was then given substantially similar responsibilities. Plaintiff had no opportunity to apply for the position he received. No other high-ranking administrator was similarly demoted.

Shortly before plaintiff's demotion Arnold made racially derogatory remarks toward plaintiff and accused her of giving preferential treatment to white employees. After the demotion plaintiff filed discrimination complaints with DMH/DD and the Equal Employment Opportunity Commission (EEOC). Within days of plaintiff's filing of her complaints, Arnold demanded that she appear for a performance evaluation. Arnold did not allow plaintiff to participate in the evaluation process and plaintiff received downgrades in most performance categories. That result came as a surprise to plaintiff. Her work generally had been well received and Arnold had told her earlier that Arnold lacked sufficient knowledge of her work to evaluate her. In their earlier conversation Arnold had asked plaintiff to prepare her own evaluation.

At some point plaintiff stopped working at Read. The complaint does not describe the circumstances surrounding her departure but refers to it variously as her "termination" and her "constructive discharge."

## DISCUSSION

### Eleventh Amendment Issues

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." The amendment has spawned a century of complicated and, on occasion, inconsistent caselaw. It is a subject that has engaged and frustrated thousands of lawyers, judges, students and professors. Over the last two decades, however, the Supreme Court has issued several decisions whose holdings can be applied with relative ease in this case. The Supreme Court has construed the Eleventh Amendment as barring most lawsuits against state governments and state officials, and under its precedents many of plaintiff's claims must be dismissed.

■ Supreme Court precedent distinguishes between federal claims that seek in-

junctive relief from state officers and federal claims that seek damage awards to be paid out of state treasuries. *Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974). The former are permitted but the latter usually are not. *Id.* Thus, in this case plaintiff may proceed with her claims for injunctive relief pursuant to § 1983 and § 1985 against Arnold or Pavkovic, in their official capacities.

■ In theory, Congress may enact statutes that authorize suits for damages against state governments, abrogating the states' Eleventh Amendment immunities on a statute-by-statute basis, but such suits are permitted only if Congress explicitly indicates its desire to extend coverage of the statute in question to state governments. *Quern v. Jordan,* 440 U.S. 332, 344, 99 S.Ct. 1139, 1146, 59 L.Ed.2d 358 (1979). The statutory language must be unmistakably clear before an intent to abrogate the states' immunities will be recognized. Because Congress failed to say explicitly, when it enacted § 1983, that state governments could be proper defendants under that statute, § 1983 claims are not permitted against state governments. *Id.* at 345, 99 S.Ct. at 1147. Plaintiff's § 1983 claims against DMH/DD and her § 1983 claims for damages against Arnold and Pavkovic in their official capacities are therefore dismissed. Like § 1983, § 1985 contains no express abrogation of Eleventh Amendment immunity, and plaintiff's § 1985 claims against DMH/DD and her § 1985 claims for damages against Arnold and Pavkovic in their official capacities are dismissed as well. *See Rucker v. Higher Educational Aids Board,* 669 F.2d 1179, 1184 (7th Cir.1982). The Eleventh Amendment does not shield the state from damage claims brought under Title VII, however, because Congress explicitly included state governments within the purview of the statute. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 448–49, 96 S.Ct. 2666, 2667–68, 49 L.Ed.2d 614 (1976).

■ Although the Supreme Court has recognized certain means by which federal claims can be pursued in federal court against states or state officials in their official capacities, it has established a rule with respect to suits under state law that cannot be bent or circumvented. Federal courts cannot hear any state law claims, whether for damages or for injunctive relief, against states or state officials in their official capacities. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 120–21, 104 S.Ct. 900, 918–19, 79 L.Ed.2d 67 (1984) (*Pennhurst II*). All of the state law claims against DMH/DD and Arnold and Pavkovic in their official capacities are therefore dismissed.

■ The fact that certain claims cannot be pursued against Arnold and Pavkovic in their official capacities does not mean that they are immune from suit in their personal capacities. An individual officer may be forced to pay damages out of his or her pocket even when the state is immune to the same claim. *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Thus, the Eleventh Amendment poses no barrier to plaintiff's § 1983, § 1985 and state law claims against Arnold and Pavkovic in their personal capacities.

### The First Amendment Claims

In count I of the amended complaint plaintiff charges defendants with retaliating against her for "alleged whistleblowing." The amended complaint does not mention the First Amendment by name, but all of the parties in the case have understood count I to be a First Amendment claim similar to the claims presented in *Pickering v. Board of Education of Township High School Dist. 205, Will County, Ill.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and *Givhan v. Western Line Consolidated School Dist.,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979), both of which involved retaliation by governmental employers against employees who spoke out on issues of public concern. Plaintiff's claim apparently is brought under 42 U.S.C. §§ 1983 and 1985.

Defendants attack count I on two grounds. First, they assert that it should be dismissed because it was pleaded in "a conclusory manner." Second, and more significantly, they assert that it should be dismissed because, while plaintiff claims to have been discharged because she was suspected of leaking docu-

ments, she never actually admits to leaking the documents. In essence, defendants' position is that a claim for abridgment of the right to freedom of speech cannot be made unless the person making the claim asserts that he or she uttered some sort of speech.

▮ The argument concerning plaintiff's "conclusory" pleadings requires little discussion. Rule 8(a) of the Federal Rules of Civil Procedure requires plaintiff to make a short and plain statement of her claim. She does not have to allege all of the particulars that she may later use to prove her case, and the fact that defendants are a state agency and state officials does not affect her burden. *See Hammond v. Town of Cicero,* 822 F.Supp. 512, 514–15 (N.D.Ill.1993). In her amended complaint she has alleged that defendants believed that plaintiff had spoken out improperly and that they demoted and then discharged her in retaliation for what they thought she said. Those allegations are enough to satisfy Fed.R.Civ.P. 8(a).

▮ Defendants' substantive argument is no more persuasive. Plaintiff claims that she sustained a direct injury as a result of defendants' reaction to the public release of certain documents. Because she was palpably injured, she need not allege that she was the one who released them in order to have standing to sue.

It is not unusual for plaintiffs to proceed with First Amendment claims without admitting to the acts or statements that the government uses as a justification for punishment. For example, *Keyishian v. Board of Regents of the University of the State of New York,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967), involved constitutional challenges to a New York state law that imposed certain conditions on employees of publicly-funded universities. One provision required faculty members to certify that they were not communists. Another provision required other non-faculty employees to swear in writing that they had never advocated the overthrow of the government by force, violence or other unlawful means and had never belonged to a group that advocated that position. Several university employees challenged the constitutionality of New York's statutory scheme after they were dismissed for refusing to give the required certifications or swear the required oaths. The plaintiffs did not admit to being communists or to advocating the overthrow of the United States government, but the Supreme Court held in their favor, stating that New York's scheme as a whole was unconstitutionally vague and that the specific provisions barring professors from becoming members of the Communist Party violated the First Amendment right to freedom of association.

In criminal cases defendants commonly challenge charges against them on First Amendment grounds without admitting to the facts that form the basis of the charges. And, if convicted, defendants often continue to deny the inculpatory facts while raising their constitutional arguments on appeal. In *Lewis v. City of New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974), for example, the Supreme Court reversed the conviction of a woman who had been convicted of violating a statute making it unlawful "wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police." The woman denied directing any profanity toward a police officer, but the trial judge found that she had called an officer, "god damn m.f. police." The Supreme Court reversed the woman's conviction on the ground that the statute was overbroad, in violation of the First Amendment.

More recently, in *R.A.V. v. City of St. Paul, Minnesota,* —— U.S. ——, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), the Supreme Court invalidated an ordinance that prohibited cross-burning and certain other racially-motivated conduct. The ordinance did not prohibit other conduct that was similar in its tendency to incite violence but was not motivated by racial prejudice. The petitioner who challenged the law had been charged with burning a cross but, because the trial court had dismissed the charge prior to trial, the record before the Supreme Court did not establish whether the petitioner actually had committed the proscribed act. The Court simply described the case as one involving "alleged" cross-burning and accepted the petitioner's First Amendment argument. It observed that cross-burning could be pro-

scribed legitimately, but held that the ordinance at issue was unconstitutional because it singled out particular expressive conduct for punishment based solely on the viewpoints that the conduct expressed.

In the case now before this court, the fact that Werthman's rights as a public employee were more limited than the rights of private citizens does not mean that she has to admit to the speech that prompted her employer's retaliation. Like the Supreme Court in *R.A.V.*, this court must concentrate on the state's response to the alleged speech, not on the alleged speaker. That is precisely how the Sixth Circuit approached a very similar set of facts in *Meyers v. City of Cincinnati*, 934 F.2d 726, 728–30 (6th Cir.1991). In *Meyers*, a firefighter sued city officials for coercing his early retirement in retaliation for critical comments he allegedly made about the city fire department's affirmative action policies. The plaintiff denied making the statements, but in upholding his claim the court focused on what city officials thought he said, not on whether he actually said it. Because there was no genuine disagreement over whether city officials retaliated against him for what they thought he said, and because the comments attributed to him concerned issues of public significance, the court concluded that the city had abridged his First Amendment rights. In light of *Meyers*, and the other cases cited, this court will allow Werthman to proceed with her First Amendment claim.

### Title VII Claims

■ Plaintiff may proceed on her Title VII claims in federal court only if they are like or reasonably related to the allegations contained in the charges she filed with the EEOC. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir.1985). Because plaintiff did not include or even hint at allegations of gender discrimination in her EEOC charges, she may not proceed on a gender discrimination claim now. This court therefore will regard count II as a race discrimination claim, even though plaintiff presents it as a claim for "race and/or sex" discrimination. The court would point out, however, that plaintiff still may be entitled to relief on a pure race discrimination claim if she can prove that race discrimination was a motivating factor in defendants' decision to demote and then discharge her, even if race discrimination was not the only motivating factor. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 250, 109 S.Ct. 1775, 1790, 104 L.Ed.2d 268 (1989) (plurality opinion).

■ Defendant Pavkovic contends that the Title VII claims against him should be dismissed for similar reasons. None of the EEOC charges name him or allude to any role he might have played in Werthman's troubles. *See Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989). The court agrees. The Title VII claims against Pavkovic are dismissed. In all other respects, however, plaintiff's Title VII claims for discriminatory demotion and termination and for retaliation are properly pleaded.

### Intentional Infliction of Emotional Distress

Defendants contend that the facts alleged are insufficient to support a claim for intentional infliction of emotional distress. Because plaintiff need not plead all of the facts on which she will later rely to prove her claim, their argument is premature. After discovery, when facts have been collected by both sides, the court will consider arguments on the sufficiency of plaintiff's claims.

### CONCLUSION

All § 1983, § 1985 and state law claims against DMH/DD and Arnold and Pavkovic in their official capacities are dismissed, except for the § 1983 and § 1985 claims for injunctive relief against Arnold and Pavkovic, which survive. The § 1983 and § 1985 claims for money damages against Arnold and Pavkovic in their individual capacities also survive. All Title VII claims against Pavkovic, and all gender claims are dismissed, but all Title VII race claims against DMH/DD and Arnold survive. The state law claims survive against Arnold and Pavkovic in their individual capacities.